J-A24038-22

## NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37

| | | |
|---|---|---|
| TOURAINE, L.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SPRUCE 1530, LLC AND AL SHAPIRO | : | |
| | : | |
| Appellants | : | No. 1848 EDA 2021 |

Appeal from the Judgment Entered November 8, 2021
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 170603620

| | | |
|---|---|---|
| TOURAINE, L.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SPRUCE 1530, LLC AND AL SHAPIRO | : | No. 1849 EDA 2021 |

Appeal from the Judgment Entered November 8, 2021
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 170603620

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:          **FILED OCTOBER 16, 2023**

Spruce 1530, LLC ("Spruce 1530") and Al Shapiro ("Shapiro") (collectively, "Appellants") appeal from the judgment entered in favor of Touraine, L.P. ("Touraine").  Touraine cross-appeals and challenges the pre-

trial order that sustained, in part, Appellants' preliminary objections.[1] After the filing of these appeals, Appellants filed an application for the substitution of a party.[2] We grant Appellants' application for substitution of a party, and affirm in part, reverse in part, and remand this matter for the entry of judgment consistent with this memorandum.

Before delving into the lengthy factual and procedural background of these appeals, we note that in 2015, Touraine was the first to file a complaint sounding in quiet title and negligence against Spruce 1530 ("the property litigation"). Spruce 1530 responded to Touraine's complaint with counterclaims asserting quiet title claims and negligence and separately filed its own quiet title complaint. Touraine prevailed in the property litigation following a trial. After prevailing in the property litigation, Touraine commenced another action against Spruce 1530 and Shapiro, Spruce 1530's principal, for wrongful use of civil proceedings and abuse of process ("the

---

[1] Appellants and Touraine filed premature notices of appeal citing pre-judgment orders entered by the trial court. We have amended the captions in these appeals to reflect that the appeals properly lie from the entry of judgment. *See* Pa.R.A.P. 905(a)(5) (stating that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof"); ***Biros v. U Lock Inc.***, 255 A.3d 489, 493 n.4 (Pa. Super. 2021), *appeal denied*, 271 A.3d 875 (Pa. 2022).

[2] While these appeals were pending, Appellants filed a suggestion of death indicating that Shapiro passed away, a representative of his estate would be named shortly. *See* Suggestion of Death, 1/3/23. Appellants subsequently filed an application for substitution of Shapiro's estate as a party.

present action") alleging their tortious conduct during the underlying property litigation.

Briefly, Appellants owned an apartment building ("the Newport") in the City of Philadelphia ("the City"). Touraine owned the adjoining apartment building ("the Touraine Building"). The Newport and the Touraine Building constituted a single parcel until a 1981 subdivision. Pursuant to the subdivision, the property line ran through a wall separating the buildings. Touraine purchased the Touraine Building in 1998.

Spruce 1530 purchased the Newport in 2001. In 2003, Spruce 1530 remodeled the Newport's first floor and incorporated two niches in Touraine's side of the wall (the "disputed niches") into an apartment in the Newport, as illustrated in the shaded areas below:



*See* Exhibit P-20.

In 2015, Touraine renovated the first floor of the Touraine Building. When Touraine removed drywall from a former tenant's space, it discovered that the Newport was using the disputed niches. After the discovery of the disputed niches, the City's Department of Licensing and Inspections ("L&I") issued code violations against the Touraine Building and the Newport for the absence of a fire-rated wall ("firewall") separating the two buildings. When Touraine's representative, Giuliano Pignataro ("Pignataro"), approached Shapiro, Spruce 1530's principal, about the disputed niches, Pignataro claimed ownership of the disputed niches under Touraine's deed. Shapiro responded that he owned the disputed niches by "adverse possession" and threatened to "cost [Touraine] so much time and so much money that [Touraine would] just give up" its ownership of the disputed niches. Findings of Fact and Conclusions of Law (Schulman, J.), 6/30/21, at 4 (internal citation to record and quotations omitted). Later, Touraine obtained an L&I permit to construct a firewall on the property line between the Newport and the Touraine Building, but Spruce 1530 appealed the issuance of the permit ("the L&I appeal").

Touraine initiated the property litigation against Spruce 1530. Touraine asserted that it owned the disputed niches based on the deeds for the buildings and a 2015 survey it commissioned. Spruce 1530 responded with its counterclaims against Touraine, including a claim that Touraine or its predecessors removed a firewall between the two buildings. Spruce 1530 also

filed a separate complaint alleging ownership of the disputed niches under a boundary by consent theory.

Following lengthy discovery proceedings, the denial of the parties' motions for summary judgment and non-suit, and a full trial, the property litigation court entered a verdict in favor of Touraine. The court concluded Touraine owned the disputed niches and Spruce 1530 failed to prove its claims of ownership. *See* Property Litigation, Verdict (Cohen, J.), 1/23/17; Property Litigation, Findings of Fact and Conclusions of Law (Cohen J.), 12/14/16, at 7 (unnumbered). The court awarded Touraine $111,570 in damages[3] and ordered Spruce 1530 to remove the encroachments from the disputed niches. *See id*.; *see also* Property Litigation, Additional Findings of Fact and Conclusions of Law (Cohen, J.), 1/23/17, at 1-2 (unnumbered). Spruce 1530 filed post-trial motions, which the court denied. Spruce 1530 appealed the property litigation judgment but later withdrew that appeal.

Touraine then commenced the present action against Appellants in 2017 and after several amendments to its complaint, Touraine asserted one count of wrongful use of civil proceedings and one count of abuse of process. *See* Third Amended Complaint, 4/2/18, at 31-34. Touraine alleged that Shapiro was individually liable for participating in Spruce 1530's conduct over the disputed niches.

_____

[3] The damages in the property litigation included $102,000 for "unjust enrichment" and $9,570 for the construction of a temporary firewall. *See* Order (Cohen, J.), 1/23/17; *see also* Property Litigation, Additional Findings of Fact and Conclusions of Law, 1/23/17, at 1-2 (unnumbered).

Appellants filed preliminary objections to Touraine's third amended complaint in the present action, and the trial court sustained, in part, the preliminary objections to Touraine's wrongful use of civil proceedings count and dismissed that claim. **See** Order (Shreeves-Johns, J.), 6/14/18.[4] The court overruled Appellants' remaining preliminary objections to Touraine's abuse of process claim, and the abuse of process claim proceeded to a non-jury trial.

At the conclusion of trial, the trial court found in favor of Touraine. **See** Findings of Fact and Conclusions of Law (Schulman, J.), 6/30/21, at 11. The court concluded Shapiro was individually liable under a participation theory and Appellants had engaged in "blackmail by litigation," unnecessarily increased the costs of the property litigation, and abused process to harass and financially injure Touraine. **See id**. at 6, 8, 11. The trial court awarded Touraine $288,417 in compensatory damages for attorney's fees, expenses, and losses. **See id**. at 12-13. The trial court also awarded Touraine $750,000 in punitive damages. **See id**. at 14.

Appellants filed post-trial motions requesting judgment notwithstanding the verdict (or "JNOV") on liability and challenging the award of punitive and compensatory damages.[5] Touraine did not file post-trial motions. The trial

---

[4] The Honorable Karen Shreeves-Johns presided over Appellants' preliminary objections to Touraine's third amended complaint in the present action. The Honorable Susan Schulman presided over the trial.

[5] Appellants' post-trial motion did not allege that the trial court erred in finding Shapiro individually liable under a participation theory.

court denied Appellants' post-trial motions, both parties appealed, and Appellants filed a praecipe for entry of judgment. The parties and the trial court complied with Pa.R.A.P. 1925.

**Touraine's Cross-Appeal**
**(Dismissal of Touraine's Wrongful Use of Civil Proceedings Claim)**

We first consider Touraine's cross-appeal at 1849 EDA 2021, in which it raises the following issue for our review:

> Can a party who admits that it never had any evidence of facts essential to the claims it asserted and no witnesses to support the claims avoid liability to the successful adverse party for wrongful use of civil proceedings because the court in the underlying case denied the successful party's motions for summary judgment and non-suit?

Touraine's Second-Step Brief at 5.

Before addressing Touraine's issue challenging the pre-trial dismissal of its wrongful use of civil proceedings claim, we consider whether Touraine preserved any issue for appeal. Issue preservation presents a question of law, and our standard of review is *de novo*, and our scope of review is plenary. ***See Trigg v. Children's Hosp. of Pittsburgh of UPMC***, 229 A.3d 260, 269 (Pa. 2020).

Pennsylvania Rule of Civil Procedure 227.1 generally requires that a party file post-trial motions to preserve issues for appeal. ***See L.B. Foster Co. v. Lane Enterprises, Inc.***, 710 A.2d 55, 55 (Pa. 1998). However, "[a] motion for post-trial relief may not be filed to orders disposing of preliminary objections, motions for judgment on the pleadings or for summary judgment, motions relating to discovery or other proceedings which do not constitute a

- 7 -

trial." Pa.R.Civ.P. 227.1(c), Note (internal citation omitted). Thus, when the trial court enters a pre-trial order dismissing one or more claims then holds a trial on a remaining claim or claims, an appellant's failure to file a post-trial motion will not waive a challenge to the pre-trial dismissal of a claim or claims. *See Olszewski v. Parry*, 283 A.3d 1257, 1261 (Pa. Super. 2022); *B.K. ex rel. S.K. v. Chambersburg Hosp.*, 834 A.2d 1178, 1181 (Pa. Super. 2003). In *Olszewski* and *B.K.*, for example, this Court declined to find waiver of appellants' challenges to interlocutory summary judgment motions because the Note to Rule 227.1(c) prohibits the filing of post-trial motions from certain pre-trial orders, including orders disposing of motions for summary judgment. *See Olszewski*, 283 A.3d at 1261-62; *see also B.K.*, 834 A.2d at 1181-82.

Here, like the appellants in *Olszewski* and *B.K.*, Touraine challenges an interlocutory pre-trial ruling dismissing its wrongful use of civil proceedings claim but did not file post-trial motions after the trial court held a trial on the remaining abuse of process claim. As stated in *Olszewski* and *B.K.*, the Note to Rule 227.1(c) prohibits post-trial motions from certain pre-trial orders disposing of a claim. *See Olszewski*, 283 A.3d at 1261-62; *see also B.K.*, 834 A.2d at 1181-82; Pa.R.Civ.P. 227.1(c), Note (indicating that post-trial motions that may not be filed from orders disposing of preliminary objections *and* summary judgment motions). Therefore, Touraine's failure to file post-trial motions does not waive its challenge to the dismissal of its wrongful use of civil proceeding claim. *See Olszewski*, 283 A.3d at 1261; *B.K.*, 834 A.2d at 1181.

It is helpful here to provide additional details concerning the disputed niches, the property litigation, and the parties' claims in the property litigation, before addressing Touraine's claim that the trial court erred in dismissing its wrongful use of civil proceedings claim.

The Newport and the Touraine Building were held as a single parcel until a 1981 subdivision.[6] **See** Property Litigation, Findings of Fact and Conclusions of Law (Cohen, J.), 12/14/16, at 2 (unnumbered). The Touraine Building underwent a series of conveyances to entities unrelated to this appeal, and in 1987, a modeling agency leased space in the Touraine Building. The modeling agency's space had interior ceilings and drywall that obscured the Touraine Building's western wall which abutted the Newport's eastern wall. **See id**. at 6. Touraine purchased the Touraine Building in 1998, while the modeling agency was still a tenant. **See id**.

The Newport remained under the ownership of the same entity responsible for the 1981 subdivision. **See id**. at 2-3. Herbert Kean, M.D. ("Dr. Kean"), the principal of that entity, managed the Newport from approximately 1985 until its sale to Spruce 1530 in 2001. **See id**. at 5. After the purchase of the Newport, Shapiro hired Arcangelo Guida ("Guida") as the architect for renovations. In 2003, Appellants completed the remodeling of Newport's first-floor area, which included renovations of a first-floor

_____

[6] In 1981, an entity known as Touraine Associates, L.P. (also referred to herein as "Associates"), owned the single parcel and subdivided it. There is no indication in the record that Associates has any relationship to Touraine, or Touraine's predecessors in interest in the Touraine Building.

apartment (also referred to as "Unit 124"). Appellants installed portions of a laundry area in one of the disputed niches and portions of a bathroom in the other disputed niche for the apartment. *See id*. at 4. Appellants' construction in the disputed niches proceeded despite the facts that their deed to the Newport did not include a description of the disputed niches and Shapiro possessed a 1998 survey that indicated that the disputed niches were on Touraine's side of the property line. *See id*. at 5-6. Additionally, Appellants did not alert Touraine to its remodeling of the Newport or seek Touraine's permission to use the disputed niches. *See id*.

In 2015, Touraine discovered the Newport's uses of the disputed niches when the modeling agency left the Touraine Building and Touraine began its own renovations. *See id*. at 7. Upon demolishing the interior drywall around the modeling agency's former space, Touraine found the back of the metal studs and drywall that Appellants had placed in the disputed niches. *See id*. at 6-7; *see also* Exhibit P-360 (photographs of Newport's improvements in the disputed niches). L&I issued code violations for the lack of a firewall between the Newport and the Touraine Building, and when Touraine obtained a permit to build a firewall on the property line, Spruce 1530 appealed.[7]

_____

[7] Touraine obtained a permit to construct a firewall along the property line in December 2015, but in 2016, Spruce 1530 took the L&I appeal of the permit, asserting that Touraine's plan called for construction on property that Touraine did not own. *See* Exhibit P-50 (L&I appeal). Touraine eventually built a temporary firewall on its property. *See* Property Litigation, Verdict (Cohen, J.), 1/23/17; *see also* Property Litigation, Additional Findings of Fact and Conclusions of Law, 1/23/17, at 1-2.

After Touraine's discovery of the Newport's uses of the disputed niches, and Shapiro's threat to cost Touraine so much time and money that Touraine would "just give up," Touraine and Spruce 1530 engaged in the property litigation. In their motions for summary judgment in that case, Touraine and Spruce 1530 each asserted that they were entitled to relief as a matter of law. *See* Exhibits 5 and 6 to Appellants' Preliminary Objections, 4/23/18 (motions for summary judgment in the property litigation). Touraine claimed it was the lawful owner of the disputed niches based on the settled property line and deeds. *See* Exhibit 5 to Appellants' Preliminary Objections, 4/23/18, at 8.

Spruce 1530, in turn, argued that it acquired title to the disputed niches by boundary by consent or the related claim of boundary by acquiescence. *See* Exhibit 6 to Appellants' Preliminary Objections, 4/23/18, at 10. Boundary by consent is a rule of repose for quieting title and discouraging confusing and vexatious litigation. ***See Zeglin v. Gahagen***, 812 A.2d 558, 561 (Pa. 2002). Boundary by consent establishes a boundary line where either (1) the parties had a dispute and reached a compromise, or (2) the opposing party recognized and acquiesced to the other's occupation of disputed property, the latter being a claim for "boundary by acquiescence." ***See id***. To establish boundary by acquiescence, a party must prove that each party claimed land on the respective sides of a line as their own, and an occupation on another's land continued for the statutory period of twenty-one years. ***Id***. A party claiming boundary by acquiescence may tack to his own possession of disputed real property the time a predecessor occupied the disputed real property. ***See id***.

- 11 -

561-66. By contrast, in an adverse possession claim, tacking requires a party to show privity of estate, that is, that the predecessor passed a claim of right to the disputed real property under the color of a deed. *See id*.

To support Spruce 1530's claims in the property litigation, Shapiro essentially relied on "logic." N.T., 4/6/21 (morning), at 50, 60. Appellants alleged the disputed niches existed before the subdivision creating the Touraine Building and the Newport in 1981,[8] or at least since 1985. *See* Exhibit 6 to Appellants' Preliminary Objections, 4/23/18, at 5-8. Appellants maintained that, after the subdivision, the Newport used the area by the disputed niches as part of a bridge club. *See id*. Appellants also relied on the deposition testimony of Dr. Kean, the Newport's previous owner, that he had not altered the Newport's walls around the bridge club since 1985 until selling the Newport to Spruce 1530. *See id*. at 8. Lastly, Appellants claimed that Touraine, or its predecessor, abandoned the disputed niches by constructing interior walls that blocked access to the disputed niches from the Touraine Building. *See id*. at 8-9

In sum, Spruce 1530 cited circumstantial evidence to establish the Newport possessed and occupied the disputed niches for more than twenty-one years before Touraine discovered them in 2015. Spruce 1530 further

---

[8] Appellants and Guida, Shapiro's architect, asserted their belief that before the subdivision, the disputed niches housed doorways that connected the two buildings. *See* N.T., 4/6/21 (morning), at 50; N.T., 4/7/21 (morning), at 101. However, Spruce 1530 presented no evidence to support that belief during the property litigation trial or at trial in the present action.

asserted that Touraine, or its predecessors, must have recognized and acquiesced to the Newport's occupation and use of the disputed niches. Alternatively, Spruce 1530 claimed that Touraine, or its predecessors, abandoned the disputed property when they erected the interior drywall around the modeling agency's space in the Touraine Building.[9]

Touraine, in its motions for summary judgment in the property litigation, countered that Spruce 1530 adduced no direct evidence establishing that Touraine, or its predecessors, agreed to, or recognized and acquiesced to the Newport's uses of the disputed niches. **See** Exhibit 5 to Appellants' Preliminary Objections, 4/23/18, at 12-17. Touraine further argued that Dr. Kean, the prior owner of the Newport, did not know the location of the property line between the Newport and the Touraine building and was unaware of the disputed niches. **See id**. at 9. Touraine claimed that Spruce 1530's theory of abandonment was frivolous because Pennsylvania law recognizes that title to real property cannot be abandoned. **See id**. at 24-25; **see also Pocono Springs Civic Ass'n, Inc. v. MacKenzie**, 667 A.2d 233, 236 (Pa. Super. 1995). Touraine further asserted that it would be absurd to conclude that the construction of an interior wall within a building could result in a finding of abandonment of property or acquiescence to another party's use of property on the other side of the wall. **See id**.

---

[9] Spruce 1530's motion for summary judgment in the property litigation did not address its counterclaim against Touraine for negligence.

The property litigation court denied all summary judgment motions without explanation, *see* Property Litigation, Order (Carpenter, J.), 9/7/16. In the ensuing property litigation trial, the court granted non-suit on Spruce 1530's negligence claim after Spruce 1530 averred that it had abandoned that claim before trial. As to Spruce 1530's remaining boundary by acquiescence claim, the property litigation court denied Touraine's motion for non-suit, explaining:

> [F]actual determinations . . . still have to be made. Among them the [c]ourt finds that there was a subdivision of the property which took place in 1981. A legal description without a survey was prepared and filed as part of the . . . subdivision.
>
> It wasn't until 1998, the earliest part [sic] that there was an actual physical survey of the property which demonstrated a line through the wall of the property, but the actual [disputed niches were] not marked in the interior as to where the property line was at that time. And so it becomes an issue as to whether this was consent or acquiescence as an issue of fact.

Exhibit 8 to Appellants' Preliminary Objections, 4/23/18 (excerpt of property litigation trial transcript). The property litigation court subsequently found in favor of Touraine and concluded: (1) Dr. Kean, Shapiro's predecessor, had no knowledge of the existence of the disputed niches; (2) Touraine did not have notice of Spruce 1530's occupation of the disputed niches; and (3) Spruce 1530 failed to prove a change in the property line under boundary by consent, boundary by acquiescence, adverse possession, or any other theory. *See* Property Litigation, Findings of Fact and Conclusions of Law (Cohen, J.), 12/14/16, at 2, 6-7 (unnumbered). The court determined Spruce 1530 failed

to prove its ownership of the disputed niches under any legal theory but did not assert Shapiro lacked any evidence supporting his claim. *See id*. at 7.

In the present action, Touraine's claim for wrongful use of civil proceedings asserted Appellants pursued claims in the property litigation without any factual or legal basis. *See* Third Amended Complaint, 4/2/18, at 32. Appellants, in their preliminary objection, argued the property litigation court's denials of Touraine's and Spruce 1530's pre-verdict motions established the existence of genuine issues of material fact. Those issues of fact, in turn, proved Appellants had probable cause to pursue their claims concerning the disputed niches. The trial court sustained Appellants' preliminary objection to Touraine's wrongful use of civil proceedings claim, *see* Order (Shreeves-Johns, J.), 6/14/18, a ruling which Touraine now contests.

This Court reviews an order sustaining a preliminary objection for legal insufficiency to determine whether the trial court committed an error of law. *See Haun v. Community Health Systems, Inc.*, 14 A.3d 120, 123 (Pa. Super. 2011). A defendant's preliminary objection seeking the dismissal of a cause of action should be sustained only when it is clear and free from doubt that the plaintiff cannot prove facts legally sufficient to establish a right to relief. *See Schemberg v. Smicherko*, 85 A.3d 1071, 1073 (Pa. Super. 2014). We apply the same standard as the trial court and consider as true all material facts and inferences reasonably deducible from the averments stated in the complaint. *See Haun*, 14 A.3d at 123.

- 15 -

A claim of wrongful use of civil proceedings is codified by the "Dragonetti Act" as follows:

**(a) Elements of action.—**A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) the proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S.A. § 8351.[10]

Probable cause, for the purpose of a wrongful use of civil proceedings claim, requires that a party have a reasonable belief in the existence of the facts upon which the party's claim is based and "[r]easonably believes that under those facts the claim may be valid under the existing or developing

---

[10] Although Touraine initiated the first lawsuit against Spruce 1530 in the property litigation, our courts have held that raising counterclaims to an initial complaint may be a basis for a wrongful use of civil proceedings actions for the "continuation" of a civil proceeding against another. *Mi-Lor, Inc. v. DiPentino*, 654 A.2d 1156, 1158 (Pa. Super. 1995) (holding that the filing of a counterclaim may constitute a continuation of a civil proceeding but noting that a claim for wrongful use of civil proceedings based on a counterclaim "demands" close examination "lest a defendant be punished for nothing more than defending himself or herself against a claim made by another"). Here, Spruce 1530 not only filed counterclaims in the property litigation, but also filed a separate complaint, and Appellants have not asserted that they were merely defending Spruce 1530 in the property litigation initiated by Touraine.

law[.]" 42 Pa.C.S.A. § 8352(1).[11]  A plaintiff claiming the wrongful use of civil proceedings may assert that a defendant acted without probable cause or with gross negligence, the latter of which "is defined as the want of even scant care and the failure to exercise even that care which a careless person would use." **Keystone Freight Corp. v. Stricker**, 31 A.3d 967, 973 (Pa. Super. 2011). "[W]here the evidence is undisputed or only slight differences exist in collateral matters, the issue of probable cause is a matter for the court and not the jury."  **Jaindl v. Mohr**, 637 A.2d 1353, 1357 (Pa. Super. 1994) (internal citation omitted).

Touraine argues it sufficiently pleaded a claim for wrongful use of civil proceedings by asserting that Appellants lacked any reasonable belief in the existence of facts to support their property litigation claims.  **See** Touraine's Second-Step Brief at 59-60.  Touraine contends the trial court erred in dismissing its wrongful use of civil proceedings claim because the property litigation court's denials of the pre-verdict motions did not resolve whether Appellants reasonably believed in the existence of facts to support Spruce 1530's claims.  **See id**. at 66.  Touraine emphasizes Appellants failed to adduce any direct evidence to support their property litigation claims.  **See id**.  Touraine adds that Shapiro, in the present action, admitted he had no

---

[11] Touraine did not name Appellants' attorneys as defendants, and Appellants did not assert they relied on the advice of counsel.

additional facts or evidence to have claimed title over the disputed niches. **See id**. at 59.[12]

In the Rule 1925(a) opinion explaining the decision to dismiss Touraine's wrongful use of civil proceedings claim, the trial court stated that it reviewed the record of the property litigation and determined that the denials of summary judgment and non-suit established the existence of triable issues of fact. Those issues of fact, the court concluded, were sufficient to determine Appellants possessed probable cause to proceed on Spruce 1530's property litigation claims against Touraine. The court thus reasoned that the pre-verdict rulings in the property litigation "overc[a]me [Touraine's] claim of wrongful use of civil proceedings" and merited the dismissal of that count in

---

[12] Touraine cites to the trial court's findings of fact in the present action, but does not cite to the trial record. **See** Touraine's Second-Step Brief at 11 (citing Findings of Fact and Conclusions of Law (Schulman, J.), 6/30/21, at 6), 59.

We also note that Touraine does not separately argue that it sufficiently pleaded a wrongful use of civil proceedings claim based on Spruce 1530's negligence counterclaim in the property litigation. Rather, Touraine's discussion of Spruce 1530's negligence claim is limited to a single footnote without any citation to law. **See** Touraine's Second-Step Brief at 60 n.28 Mere issue spotting without analysis or discussion of pertinent legal citation to support an assertion precludes our appellate review of a matter. **See Coulter v. Ramsden**, 94 A.3d 1080, 1088-89 (Pa. Super. 2014); **see also Irwin Union Nat'l Bank and Trust Co. v. Famous and Famous and ATL Ventures**, 4 A.3d 1099, 1103 (Pa. Super. 2010). Therefore, we conclude any assertion that the trial court erred by failing to consider Spruce 1530's negligence counterclaim is waived. We add that the trial court in the present action awarded damages on Touraine's abuse of process claims related to Spruce 1530's negligence claim, and Touraine does not assert the dismissal of its wrongful use of civil proceedings claim concerning Spruce 1530's negligence claim prevented it from seeking additional damages.

the present action. Trial Court Opinion (Shreeves-Johns, J.), 11/9/21, at 6-7.

Following our review, we discern no basis to disturb the trial court's dismissal of Touraine's wrongful use of civil proceedings claim. The record before the court[13] established Appellants had based their property litigation claims upon the history of the properties, and the conditions of the buildings when Touraine purchased the Touraine Building and Spruce 1530 purchased the Newport. Those facts constituted a circumstantial case that the Newport's uses of the disputed niches predated both Spruce 1530's and Touraine's

_____

[13] We note that the standard of review of a preliminary objection for failure to state a claim generally focuses on the allegations set forth in the complaint itself. *See Bellan v. Penn Presbyterian Medical Center*, 271 A.3d 506, 509 (Pa. Super. 2022) (noting that a court, when considering preliminary objections, accepts all material facts set forth in the challenged pleadings as true), *appeal denied*, 283 A.3d 793 (Pa. 2022). However, where the complaint refers to prior judicial proceedings, a court may take notice of the record in those proceedings. *See Khalil v. Cole*, 240 A.3d 996, 1001 (Pa. Super. 2020). Moreover, when the objecting party relies on matters outside of the complaint and raises substantive defenses, the failure of the responding party to file preliminary objections to the preliminary objections waives a claim that the trial court erred in considering matters not set forth in its complaint or a substantive defense more properly reserved for new matter and a judgment on the pleading. *See Richmond v. McHale*, 35 A.3d 779, 782 (Pa. Super. 2012). Here, Touraine's third amended complaint referred to and attached portions of the record from the prior property litigation. *See* Third Amended Complaint, 4/2/18, at 2-26 & Exhibits J, P. Touraine did not object to Appellants' preliminary objections when Appellants raised a substantive defense based on the pre-verdict rulings in the property litigation, nor did Touraine object to Appellants' inclusion of additional materials from the property litigation. Thus, the trial court, when ruling on Appellants' preliminary objection, was not bound to accept Touraine's averment in its third amended complaint that Appellants lacked a reasonable belief in the existence of facts to support their property litigation claims.

ownership of their respective buildings and supported a possible claim of boundary by acquiescence, which did not have the same strict privity of estate requirement for tacking as did adverse possession. ***See Zeglin***, 812 A.2d at 561.

Moreover, our review reveals that the trial court here properly acknowledged the existence of triable issues of fact in the property litigation— namely, whether Touraine, or its predecessors, had, or should have had, knowledge of the Newport's occupation of the disputed niches and acquiesced to that occupation for more than twenty-one years. ***See*** Exhibit 8 to Appellants' Preliminary Objections, 4/23/18 (indicating the trial judge in the property litigation denied Touraine's motion for non-suit because there remained issues of fact as to Touraine's knowledge of Spruce 1530's uses of the disputed niches and whether Touraine acquiesced to those uses). That Appellants lacked direct evidence to overcome Touraine's assertions that it had no knowledge or notice of the Newport's uses of the disputed niches was relevant to the ultimate merits of the property litigation—*i.e.*, Spruce 1530's possibility of prevailing at the property litigation trial—not whether Appellants possessed probable cause in procuring, initiating, or continuing the property litigation.

For these reasons, we discern no error in the trial court's dismissal of Touraine's wrongful use of civil proceedings claim.[14]  ***See Haun***, 14 A.3d at 123.  Appellants had a reasonable belief in the existence of circumstantial facts to bring their property litigation claims concerning the existence, occupation, and uses of the disputed niches.  We acknowledge Appellants lacked adequate independent and direct evidence to prevail in the property litigation.  However, based on the record developed by the parties, we cannot conclude Appellants lacked probable cause or were grossly negligent in believing they possessed circumstantial facts to bring their property litigation claims and counterclaims against Touraine.  Accordingly, we affirm the order sustaining Appellants' preliminary objection in part and dismissing Touraine's count of wrongful use of civil proceedings.

**Appellants' Appeal**
**(Liability and Damage for Abuse of Process)**

Next, we consider the appeal at 1848 EDA 2021, in which Appellants raise the following issues:

A. Whether the trial court erred in failing to grant JNOV in [Appellants'] favor on [Touraine's] abuse of process claim where: (i) in concluding that [Appellants] lacked colorable grounds to bring the underlying action, the trial court misapprehended Pennsylvania's boundary-by-consent law,

---

[14] We emphasize that we agree with Touraine's threshold argument that prior rulings in an underlying action do not automatically establish the presence of probable cause.  ***See McKibben v. Schmotzer***, 700 A.2d 484, 493 (Pa. Super. 1997).  However, given the procedures of this case, the record presented to the trial court, and our own review, we find no error in the trial court's decision to dismiss Touraine's count for wrongful use of civil proceedings.

including the ability of a party to "tack" one's ownership on to that of previous owners to satisfy the doctrine's 21-year requirement; (ii) in focusing on its belief that [Appellants] lacked a colorable basis to bring the underlying [property litigation] action, the trial court misapplied abuse-of-process law and effectively overruled prior decisions of other judges of coordinate jurisdiction; and (iii) in concluding that an abuse of process occurred in the absence of evidence that any process or procedure was abused or perverted, the court misapplied controlling precedent?

B. Whether the trial court erred in failing to grant JNOV in favor of . . . Shapiro in the absence of evidence establishing that Shapiro personally engaged in tortious conduct separate and apart from his role as a member of [Spruce 1530,] an LLC?

C. Whether the trial court erred and abused its discretion in first awarding, and later failing to set aside, a $750,000 punitive damages award after [Touraine] failed to prove the elements of an abuse of process claim, as well as wanton, willful, or outrageous conduct on the part of [Appellants], and where, in any event, the punitive damages amount award was arbitrary and capricious, excessive, and unconstitutional such that the award must be vacated or a new trial granted?

D. Whether the trial court erred in awarding $288,000 in compensatory damages to Touraine in compensation for attorneys' fees and costs, without competent evidence to support such a claim, based solely on arbitrary estimates derived from block-billed attorney fee records presented by a lay witness, who had no personal knowledge about the specifics of the legal work performed such that the award should be vacated?

Appellants' First-Step Brief at 4-5.

The following background provides additional context for Appellants' first two issues contesting the trial court's finding that Spruce 1530 and Shapiro, individually, abused process. As noted above, Pignataro, Touraine's representative, met with Shapiro to discuss the disputed niches. Pignataro planned to construct a masonry wall in line with the Touraine Building's

western exterior wall and have Appellants constructing whatever was necessary to bring the Newport into compliance for a firewall.  *See* N.T., 4/7/21 (afternoon), at 18-19.   At trial in the present action, Pignataro described the meeting with Shapiro as follows:

> He made it clear to me that he wasn't going to [agree to Pignataro's plan], and then he made the suggestion that I should build the fire-rated separation that would have satisfied both properties' requirements [on Touraine's side of the property line].
>
> * * * *
>
> So when he said that, I became incredulous. . . .
>
> I said, "You know, that would be me building the wall totally on my side.  Why do I have to do that?  Why is that Touraine's responsibility?" He said, "It doesn't matter.  That's what's going to happen."
>
> I said, "How are you going to accomplish this?  This is the Touraine property." . . . [W]e had a conversation about, you know, whether he would assert ownership over these areas.  I was made to understand that he was going to make an adverse possession claim.
>
> * * * *
>
> When he talked about the adverse possession thing, I said, "Well, how are you going  to do that?  That doesn't make any sense to me."   Nobody knew about these things.   I don't remember my exact words, but that's what I was saying, "How are you going to make that claim?"
>
> His response to that question was, "It doesn't matter, because it's going to cost you so much time and so much money that you're just going to give up."  Those were -- I might be paraphrasing a little bit, but those were pretty close to his words.

*Id*. at 19-21.  Pignataro testified that he left Shapiro's office, Shapiro chased him down the hallway, poked him in the chest, and continued to yell at him. *See id*. at 20.  Touraine and Spruce 1530 commenced the property litigation

- 23 -

shortly after this meeting.  Spruce 1530, as noted above, also appealed L&I's issuance of a permit for Touraine to build a firewall along the property line.

During lengthy and contentious discovery proceedings in the property litigation, Touraine served interrogatories seeking information about individuals who had knowledge of, or performed, the Newport's renovations in and around the disputed niches.[15]  Spruce 1530, using information Shapiro provided, initially identified numerous individuals and, one month before the close of discovery, offered a supplemental response identifying a total of thirteen people.  **See** Exhibit P-89 (Spruce 1530's objections and answers to

_____

[15] Touraine's interrogatories requested the following:

> **Interrogatory No. 2.** Provide the full name, address, telephone number, place of employment and job title of every person you know or believe may have knowledge or information concerning: (i) the subject matter of this action; (ii) the claims and defenses in this action; (iii) the subject matter of [Touraine's complaint in the property litigation]; (iv) the claims and defenses in the [Touraine's action in the property litigation]; or (v) the allegations, averments, facts, occurrences or transactions set forth and described in [the pleadings] you filed in [in Touraine's action in the property litigation].

> * * * *

> **[Interrogatory No.] 13.** Provide the full name, address, telephone number, place of employment and job title of all persons who performed any construction work, fit-out work or physical improvements and/or alterations (including, but not limited to, electrical work, plumbing work, drywall work, masonry work, tile work, painting work, etc.) to Unit 124 in and around the Disputed Areas . . ..

**See** Exhibit P-89, Nos. 2, 13.

- 24 -

Touraine's interrogatories, Nos. 2, 13); Exhibit P-96 (supplemental response to Touraine's interrogatories). Of the individuals listed in Spruce 1530's supplemental response, only three had information relevant to the property litigation.

Spruce 1530 also noticed depositions of several individuals whom, it alleged, had knowledge of the creation or uses of the disputed niches by Touraine's and Spruce 1530's predecessors. *See* N.T., 4/7/21 (afternoon), at 33. Pignataro testified at trial in the present action that Touraine prepared for the depositions, but Spruce 1530 canceled those depositions "at the last minute." *Id*. at 33-34. Shapiro admitted that he talked to some of the individuals and determined none of the individuals named in the notices could provide relevant information about the disputed niches. *See* N.T., 4/6/21 (morning) at 70.

As discussed *supra*, the parties filed motions for summary judgment in the property litigation. Spruce 1530 asserted a claim of boundary by acquiescence concerning the disputed niches. Touraine responded it had a superior claim based on title and Spruce 1530's lack of evidence to support its claims to the disputed niches.[16]

On the eve of the property litigation trial, Shapiro disclosed that he was in possession of the 1998 survey, which confirmed Touraine's claim about the

---

[16] In the present action, Touraine describes Spruce 1530's summary judgment motions as manufacturing issues of fact by claiming boundary by acquiescence and frivolously arguing that Touraine or its predecessors had abandoned the disputed niches.

location of the property line. Counsel for Touraine, at a deposition in anticipation of trial in the present action, asked why Shapiro did not turn over the 1998 survey earlier, and he responded, "Beats me." N.T., 4/6/21 (morning), at 46.

Shapiro admitted to Spruce 1530's filing of post-trial motions and an appeal, as well as the withdrawal of the appeal. Pignataro, at trial in the present action, described these efforts as "trying to get me to . . . whittle down what I had been given by [the property litigation court]." *See* N.T., 4/7/21 (afternoon) at 41. When asked if Appellants offered to drop their appeal if he agreed to accept less or no damages in the property litigation, Pignataro responded affirmatively. *See id*.

In the present action, Touraine asserted, in relevant part, Appellants abused process in nine areas related to the property dispute: (1) the submission of misleading discovery responses; (2) the submission of unverified discovery responses; (3) the issuance of improper subpoenas; (4) the issuance notices of depositions that Spruce 1530 canceled at the last minute; (5) the filing of summary judgment motions and responses that manufactured issues of material fact; (6) the prosecution of a baseless claim of negligence against Touraine; (7) the concealment of the 1998 survey; (8) the L&I appeal of the permit to Touraine to build a firewall; (9) the filing of meritless post-trial motions and a direct appeal that Spruce 1530 later withdrew. At trial, Pignataro testified to the additional legal expenses and delays caused by Appellants' actions over the disputed niches and the

payments of Touraine's legal expenses. *See* N.T., 4/7/21 (afternoon), at 22-34, 72-95. Pignataro also asserted Touraine lost six months of rent, or $23,000, from a coffee vendor due to the delay in the renovations and $5,200 in amenity fees charged to new leases. *See id*. 54, 98-99. Additionally, Touraine's expert, George Bochetto, Esq., opined that Appellants' conduct amounted to abuse of process in each of the areas.[17]

Shapiro and Guida testified at trial in the present action, as did Spruce 1530's counsel for the property litigation. They explained that they believed that the disputed niches had belonged to Spruce 1530 and explained their conduct in the property litigation. In his testimony, Shapiro admitted he had no knowledge or evidence that Touraine or its predecessors had removed an existing firewall between the buildings and used "just logic" to assert a negligence counterclaim in the property litigation. N.T., 4/6/21, at 51-54, 60.[18] Shapiro conceded there were no express disputes or agreements

---

[17] *See* N.T., 4/8/21 (afternoon), at 51 (discussing the L&I appeal), 52-53 (discussing the lack of evidence to support Spruce 1530's boundary by consent theory), 55 (discussing the improper certification on Spruce 1530's discovery response), 57-58 (discussing Spruce 1530's discovery responses), 65 (discussing Spruce 1530's subpoenas and cancellations of depositions), 69 (discussing Shapiro's late disclosures of the 1998 survey), 71-72 (discussing Spruce 1530's summary judgment motions), 82 (discussing Spruce 1530's negligence counterclaim), 85-86 (discussing Spruce 1530's post-trial motion and appeal). Additionally, Touraine's expert testified that Touraine's counsel had responded reasonably to Appellants' tactics and that the billings for Touraine's legal responses were reasonable. *See id*. at 87-88.

[18] Shapiro explained, "Well, there must have been a firewall there at one point, and the only person or company that could have moved it would have been
*(Footnote Continued Next Page)*

indicating Touraine or its predecessors acceded to the Newport's use of the disputed niches. *See id*. at 102, 104-06. He also agreed with counsel that all of the deeds and surveys indicated the disputed niches encroached onto Touraine's property. *See id*. at 103. He also admitted that there were no witnesses that Touraine or its predecessors knew about the "encroachments." *Id*. at 102. Shapiro denied making any threats to Pignataro. *See id*. at 19. Additionally, Appellants called as an expert the Honorable Mark Bernstein, who opined Spruce 1530 had a *prima facie* case for its boundary by acquiescence claim, Appellants conduct over the disputed niches constituted typical litigation practices, and Appellants did not unnecessarily increase the costs of the property litigation. *See* N.T., 4/9/21, at 66, 68-90.

At the conclusion of the trial, the court found that Appellants abused process in eight of the nine areas claimed by Touraine.[19] The court credited Pignataro's testimony that Shapiro had threatened to cost Touraine so much time and money that Touraine would "give up" and cede the disputed niches to Spruce 1530. Trial Court Opinion (Schulman, J.), 12/20/21, at 3 (internal citation to the record and quotations omitted). The court emphasized that Appellants followed up on Shapiro's threat by increasing the costs of the property litigation. *See id*. at 14. The court broadly asserted that Shapiro

_____

the Touraine." *See* N.T. 4/6/21 at 54. Later, Shapiro's testimony indicated that he continued to believe the disputed niches existed before the 1981 subdivision and housed doors between the two buildings. *See id*. at 75-76.

[19] The trial court determined that Appellants had not abused process by using a certification form rather than a verification form for their discovery responses.

admitted that he had no evidence or witnesses to support **any** of his claims to the disputed niches. **See id**. at 13-14 (citing N.T., 4/6/21, at 102-04, 60); **see also** Findings of Fact and Conclusions of Law (Schulman, J.), 6/30/21, at 6. The court thus concluded that Shapiro's primary purpose was "to intimidate and threaten Touraine into ceding its lawfully owned property with full knowledge that there was neither a credible legal theory, nor any evidence or witnesses to support his claim." **Id**. at 4.[20] Further, the court determined that Shapiro had personally participated in Spruce 1530's tortious conduct and therefore held him individually liable under a "participation theory." **See id**. at 20 (citing **Wicks v. Milzoco Builders, Inc.**, 470 A.2d 86, 89-90 (Pa. 1983) (holding that Pennsylvania recognizes a participation theory to impose liability on a corporate officer who, by misfeasance, participates in the corporation's

---

[20] As noted in our discussion of Touraine's wrongful use of civil proceedings claim, Appellants had a colorable circumstantial claim in the property litigation based on boundary by acquiescence. Thus, we find no legal support for the trial court's assertion that Shapiro knew he did not have any credible legal theory to the disputed tracts or any evidence to support his claims. **See** Trial Court Opinion (Schulman, J.), 12/20/21, at 13-14, 25; **see also** Findings of Fact and Conclusions of Law (Schulman, J.), 6/30/21, at 6. Additionally, a review of the trial court's citation to the trial transcripts reveals that Shapiro made several concessions concerning his lack of evidence to support Spruce 1530's negligence counterclaim and the weaknesses in Appellants' property litigation claims. **See** N.T., 4/6/21, at 51-54, 60, 102-106. The record does not support the finding that Shapiro proceeded in the property litigation with full knowledge he lacked a credible legal theory, or any evidence or witnesses to support Spruce 1530's boundary by acquiescence. However, it was clear from the pleadings in the property litigation that Spruce 1530's claims hinged on rebutting Touraine's claim that it had no notice of the Newport's use of the disputed niches.

wrongful act; noting further that individual liability under a participation theory is separate from a claim seeking to "pierce the corporate veil").[21]

**Liability for Abuse of Process**

In their first two issues, Appellants contend that the trial court erred in denying their post-trial motions for JNOV. When reviewing the denial for a motion for JNOV, this Court determines whether there was sufficient competent evidence to support the verdict. *See Burns v. Cooper*, 244 A.3d 1231, 1237 (Pa. Super 2020). We review the record in the light most favorable to the verdict winner, grant the benefit of every favorable inference, and resolve any conflict in the evidence in favor of the verdict winner. *See Miller v. St. Luke's Univ. Health Network*, 142 A.3d 884, 896 (Pa. Super. 2016). Our scope of review is plenary, but this Court will not substitute its judgment for that of the factfinder on matters of the credibility and weight of the evidence presented at trial. *See Karden Construction Services, Inc. v. D'Amico*, 219 A.3d 619, 627 (Pa. Super. 2019). JNOV "may be granted only in clear cases where the facts are such that no two reasonable minds could fail to agree that the verdict was improper." *Miller*, 142 A.3d at 896 (internal citation omitted).

_____

[21] Additionally, the trial court supported its findings that Shapiro's primary purpose was not to seek a legitimate resolution of his claims to the disputed niches but to financially injure Touraine by prolonging the property litigation. Specifically, the court cited Shapiro's "demeanor and angry outbursts" during the trial in the present action and his "flippant attitude" throughout the property litigation and the present action. Trial Court Opinion, 12/20/21, at 15-16.

A claim for abuse of process requires the plaintiff to show that that the defendant "(1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *See P.J.A. v. H.C.N.*, 156 A.3d 284, 288 (Pa. Super. 2017) (internal citation omitted). Process, for the purpose of an abuse of process claim, has a broad meaning as "the entire range of procedures incident to the litigation process." *Greenberg v. McGraw*, 161 A.3d 976, 987 n.10 (Pa. Super. 2017) (internal citations, quotations, and emphasis omitted).

Abuse of process requires "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process . . .." *Freundlich & Littman, LLC v. Feierstein*, 157 A.3d 526, 531 (Pa. Super. 2017) (internal citations and quotations omitted). "[T]he gravamen of this tort is the perversion of legal process to benefit someone in achieving a purpose which is not an authorized goal of the procedure in question." *P.J.A. v. H.C.N.*, 156 A.3d at 288 (internal citation omitted). However, when "the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions," an abuse of process claim will fail. *See Freundlich & Littman*, 157 A.3d at 531 (internal citation and quotations omitted).

An abuse of process claim differs from a wrongful use of civil proceedings claim.[22] A wrongful use of civil proceedings claim, as noted above, focuses on the initiation of process, that is, the initiation or continuation of a claim with malicious motive and without probable cause. *See id*. at 532. In an abuse of process action, "it is immaterial that the process was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of the person instituting or initiating them." *Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. 2008). The conduct relevant to an abuse of process claim is the misuse of the process for illegitimate purposes. *See id*. at 1238-39.

Appellants argue that the evidence showed that they used process for the legitimate purpose of resolving ownership of the disputed niches. *See* Appellants' Step One Brief at 19-20, 23. Appellants review all eight areas in which the trial court found liability and contend that they acted appropriately under the circumstances and did not unnecessarily increase the costs of litigation. Appellants assert that the trial court conflated the elements of an abuse of process claim with a wrongful use of civil proceedings claim when it focused on Shapiro's lack of evidence to support Spruce 1530's property

---

[22] Our Supreme Court has stated that the Dragonetti Act "subsumes" the common law tort of abuse of process. *See Stone Crushed Partnership v. Kassab Archbold Jackson & O'Brien*, 908 A.2d 875, 877 n.1 (Pa. 2006). However, our Court has indicated that statement was *dictum*, and we continue to recognize abuse of process as a distinct cause of action. *Freundlich & Littman*, 157 A.3d at 532 n.3.

litigation claims and his malicious intent toward Touraine. Moreover, they claim that the court failed to appreciate the distinctions between their colorable boundary by acquiescence claim in the property litigation and an adverse possession claim. *See id*. at 17-18, 24-25. They emphasize that at least three prior judges determined that Appellant had raised sufficient issues of fact for Spruce 1530 to proceed to a full trial in the property litigation. *See id*. at 26-27. They assert those rulings established the legitimacy of their claims to the disputed niches. *See id*.[23]

The trial court responds that its verdict was proper. Citing *Shiner v. Moriarty*, 706 A.2d 1228 (Pa. Super. 1998), the court emphasized that the pivotal issue was whether Appellants had primarily used process for purposes for which they were not intended. *See* Trial Court Opinion, 12/20/21, at 8-9. The court concluded that its finding concerning Shapiro's statements to Pignataro, "was the primary credibility determination from which [Touraine's abuse of process claim] flowed." *See id*. Viewing Appellants' conduct through the lens of Shapiro's stated motivation, the trial court found it clear that Appellants abused process to force Touraine to make a "financial decision to cede its property" to Appellants' unfounded claims and make Touraine "suffer

---

[23] We acknowledge Appellants raise more specific arguments that the L&I appeal does not constitute a legal process and that the trial court disregarded Spruce 1530's corporate form when holding Shapiro individually liable. However, because Appellants did not preserve those issues in their post-trial motions, we conclude that they are waived. *See Bensinger v. University of Pittsburgh Medical Center*, 98 A.3d 672, 685 (Pa. Super. 2014); *see also* Pa.R.Civ.P. 227.1(b)(2) (noting that grounds for relief "not specified in a post-trial motion are deemed waived . . .").

substantial financial injury due to protracted litigation" when Touraine vindicated its right to the disputed niches. *Id*. at 16.

The trial court discussed the eight areas in which it imposed damages and credited Touraine's evidence that: (1) Shapiro led Touraine on a "wild goose chase" by responding to a discovery request and providing names of individuals he did not know or had no knowledge of the information requested; (2) Spruce 1530 noticed and then cancelled depositions of individuals whom Appellants claimed could support a boundary by acquiescence claim, but who had no relevant information; (3) Spruce 1530's appealed Touraine's efforts to obtain L&I permits to build a firewall; (4) Appellants filed motions for summary judgment that "manufactured a question of material fact . . . in order to further draw out" the property litigation; (5) Shapiro "unapologetically and flagrantly withheld" a 1998 survey, which showed that the encroachments by Spruce 1530 in the disputed niches went beyond the property line; (6) Appellants failed to withdraw their negligence claim until the middle of trial; (7) Shapiro directed his attorneys to file post-trial motions; and (8) Shapiro directed his attorneys to file an appeal, which was later withdrawn, in order to attempt to seek a settlement to reduced damages. *Id*. at 17-20 (hereinafter, "the findings of liability"). It is important to note the trial court emphasized that each area alone did not establish liability for abuse of process; rather, the court found the case, "when taken in its totality, [made it] abundantly clear that [Appellants] embarked on a calculated [mis]use of each of these individual processes to follow through on the threat to force Touraine into

giving up its property rather than endure lengthy and costly litigation." *Id*. at 20.

Following our review of the record in a light most favorable to Touraine as the verdict winner, we find no error in the trial court's decision to find Appellants liable based on the totality of the circumstances. The court credited Pignataro's testimony about Shapiro's threat and Touraine's expert's testimony concerning Touraine's abuse of process claim. The court, further rejected Appellants' evidence that they used process for legitimate purposes. The court's finding that Appellants' primary purpose was to intimidate Touraine with financial harm to advance dubious claims of right to disputed niches has support in the record.[24] *See Burns*, 244 A.3d at 1238.

Further, the record was not so clear as to support Appellants' request for JNOV. Although Appellants minimize the import of Shapiro's statement to Pignataro, the trial court was entitled to credit the statement as a threat that Shapiro would, without regard to the merits of his claims to the disputed niches, cost Touraine so much money that they would cede the disputed niches to Spruce 1530. Similarly, the findings that Appellants engaged in a "wild goose chase" during discovery and unreasonably increased the costs of the litigation have support based on the testimony of Pignataro and Touraine's

---

[24] While Appellants insist that evidence of Shapiro's malicious intent is more properly viewed as an element of a wrongful use of civil claim, we agree with the trial court that evidence of malicious intent and bad faith are relevant when weighing whether Appellants perverted the process for the primary purpose of achieving an illegitimate purpose. *See Shiner*, 706 A.2d at 1236.

- 35 -

expert witness. Likewise, Pignataro's testimony that Appellants used its post-trial motions and the direct appeal in the property litigation as a means to demand from Touraine a reduction in the amount of damages in the property litigation court further supports court's findings. Having considered the record and the trial court's findings based on the totality of the circumstances,[25] we discern no basis to disturb the trial court's finding that Appellants primarily used process for illegitimate purposes that significantly outweighed any legitimate purpose Appellants may have had in using process to resolve ownership of the disputed niches.

Thus, following our review of Appellants' claim that they were entitled to JNOV on the question of liability for abuse of process, we must affirm the trial court. *See **Miller*** 142 A.3d at 896.

**Punitive Damages**

---

[25] As noted above, we do not agree with the trial court's assertion that Shapiro testified that he knew he did not have ***any*** credible legal theory to the disputed tracts or ***any*** evidence to support a boundary by acquiescence claim. ***See*** Trial Court Opinion (Schulman, J.), 12/20/21, at 13-14, 25; ***see also*** Findings of Fact and Conclusions of Law (Schulman, J.), 6/30/21, at 6. We conclude that any error in rejecting Appellants' possible legitimate uses of process against their illegitimate uses of process did not affect the trial court's decision to deny JNOV. Here, the trial court credited Pignataro's testimony concerning Shapiro's threat and had ample other bases in the record to conclude that Appellants' ***primary*** purpose was illegitimate based on the totality of the circumstances.

In their third issue on appeal, Appellants assert that the trial court erred in refusing to set aside its award of punitive damages.[26] "It is well settled that punitive damages will lie only in cases of outrageous behavior, where defendant's egregious conduct shows either an evil motive or reckless indifference to the rights of others." *See Bannar v. Miller*, 701 A.2d 232, 242 (Pa. Super. 1997) (internal citations and quotations omitted). Thus, "[p]unitive damages must be based on conduct which is malicious, wanton, reckless, willful, or oppressive." *Shiner*, 706 A.2d at 1239. (internal citation and quotations omitted).

The purpose of punitive damages is to punish the defendant's conduct and deter similar behavior in the future. The state of mind of the defendant is vital when determining whether punitive damages should be awarded. *See Smith v. Celotex Corp.*, 564 A.2d 209, 211 (Pa. Super. 1989). Where the defendant has acted in a merely negligent manner, or even a grossly negligent manner, the defendant is insufficiently culpable or aware of the risks of his conduct to deter similar future behavior. *See id*. "The determination of whether a person's actions arise to outrageous conduct lies within the sound discretion of the fact-finder and will not be disturbed by an appellate court so

---

[26] We note that Appellants challenge both the award and the amount of punitive damages. *See* Appellants' First-Step Brief at 41-49. However, in their post-trial motions, Appellants claimed that the trial court improperly imposed punitive damages but did not claim the amount of punitive damages was excessive or disproportionate. *See* Appellants' Post-Trial Motions, 7/9/21, at 48-51. Therefore, we will only consider Appellants' claim that the trial court erred in awarding any punitive damages. *See Bensinger*, 98 A.3d at 685; *see also* Pa.R.Civ.P. 227.1(b)(2).

long as that discretion has not been abused." *J.J. DeLuca Co., Inc. v. Toll Naval Associates*, 56 A.3d 402, 416 (Pa. Super. 2012) (internal citations and quotations omitted).

In *Shiner*, this Court upheld the imposition of punitive damages in Shiner's abuse of process case based on a law firm's participation in a property dispute over a lease against the Shiners. With respect to the law firm, this Court noted that the firm had "acted as mercenaries in a calculated scheme of harassment" by Moriarty against the Shiners. *See Shiner*, 706 A.2d at 1231-33, 1241. In that case, the disputes between the Shiners and Moriartys spanned multiple instances of litigation over four years, during which several jurists opined that the Moriartys' claims were frivolous. *See id*. at 1231-33. The *Shiner* Court concluded that the law firm, the second firm to provide the Moriartys representation, "abus[ed] a right of access to publicly funded courts, abus[ed] ethical and social obligations[,] and squander[ed] resources reserved for the adjudication of meritorious disputes." *Id*. at 1241. In *Bannar*, likewise, a wrongful use of civil proceedings case, this Court found the award of punitive damages proper based on evidence that the defendant Miller: (1) initiated and continued a suit despite knowing of factual inaccuracies in the pleading; (2) filed the suit on behalf of another without her knowledge or consent; (3) pleaded excessive damages; and (4) had an agent in a Santa Claus costume serve the plaintiffs shortly before Christmas. *See Bannar*, 701 A.2d at 242.

Appellants assert that the trial court erred in imposing punitive damages. *See* Appellants' First-Step Brief at 43. They maintain that they had an adequate basis to litigate their claims over the disputed niches and assert that the trial court's findings that they acted willfully or outrageously by litigating without proper cause lacked support in the record. *See id*.

The trial court responds that its award of punitive damages was supported by the record and a proper exercise of discretion. *See* Trial Court Opinion (Schulman, J.), 12/20/21, at 25. The court specifically found:

> [Appellants'] willful and outrageous conduct began with the institution of litigation without cause, and then continued throughout the pendency of the litigation and beyond, with post-trial motions and appeal. This was not just one "act", but a persistent willingness to flout the law throughout years of litigation, compounded each time [Appellants] forced Touraine to engage in discovery, argue motions, go to trial and respond to post-trial and appellate proceedings.

Findings of Fact and Conclusions of Law (Schulman, J.), 6/30/21, at 13. In its Rule 1925(a) opinion, the court reasoned:

> [Appellants'] actions were willful and outrageous insofar as Mr. Shapiro threatened Touraine with the cost of protracted litigation over a parcel of land to which he knew he had no legal claim, and then followed through on that threat by extending and complicating every stage of litigation as punishment to Touraine for failing to cede its rightfully owned property. There was no good faith effort to settle the dispute by Shapiro; instead, the only so-called settlement offer [to have Touraine construct a firewall on its own property] would have had Touraine give up *even more* property than Shapiro initially demanded. The litigation thwarted Touraine's ability to gain income it sought from commercial rent; caused Touraine to litigate [Appellants'] unfounded L&I action; and caused Touraine to incur exorbitant and unnecessary expenses to defend its lawfully held property interests. The legal fees and costs incurred to defend themselves against [Appellants']

- 39 -

> specious claims ran into hundreds of thousands of dollars. Shapiro was neither subtle nor discreet in displaying his intent — to the contrary — he candidly admitted that he had no legal support for his claim to Touraine's property and showed disdain for the legal process. That, coupled with the threats made to make Touraine give up its lawfully held property under the weight of frivolous litigation, left no doubt as to his willful and outrageous conduct.

Trial Court Opinion (Schulman, J.), 12/20/21, at 25-26 (emphasis in original).

Following our review, we are constrained to conclude the trial court abused its discretion when concluding Appellants' actions concerning the disputed niches were so outrageous, willful, or reckless to merit punitive damages. The court's finding that Appellants' property litigation claims were baseless was critical to its conclusion that Appellants acted willfully and outrageously. *See* Findings of Fact and Conclusions of Law (Schulman, J.), 6/30/21, at 13 (stating Appellants' "willful and outrageous conduct began with the institution of litigation without cause");[27] *see also* Trial Court Opinion (Schulman, J.), 12/20/21, at 25-26 (describing Appellants' property litigation claims as "specious," suggesting the litigation was "frivolous," and concluding Shapiro admitted he had no legal support for Spruce 1530's claims). Yet, the trial court recognized that each of Appellants' acts alone would not amount to an abuse of process if their property litigation claims were "legitimate." Trial Court Opinion (Schulman, J.), 12/20/21, at 20. As discussed *supra*, Appellants had a colorable circumstantial case sufficient to proceed to a verdict at trial in the property litigation, and the record did not support the court's

---

[27] Touraine technically initiated the property litigation when it filed the first complaint in that action.

broad finding that Shapiro testified that he knew he lacked any credible legal theory to claim ownership over the disputed niches. That Touraine incurred additional litigation expenses, which were the subject of the present action, does not establish the type of outrageous conduct worthy of punitive damage. *See Shiner*, 706 A.2d at 1231-33; *Bannar*, 701 A.2d at 242.

Moreover, unlike the defendants in *Shiner*, Appellants did not inundate Touraine and the courts with multiple filings. *See Shiner*, 706 A.2d at 1232-33 (summarizing defendants' filings of an equity action, a request for an injunction, defenses to an ejectment action, attempts to amend their equity action, appeals, and attempts to transfer their equity action to the law side of the trial court). Touraine and Appellants engaged in a single consolidated action that concluded after a full trial. In *Shiner*, several prior courts rejected the defendants' claims, and one of the courts described those claims as "specious in the extreme" and willfully ignorant of the prior court rulings. *Id*. at 1233. Here, Appellants did not ignore prior court rulings on their property litigation claims, nor did any other court tell Appellants their claims were frivolous.[28] The property litigation court did not find Appellants lacked any evidence or legal theory. The property litigation court denied almost every pre-verdict motion and upon completion of the trial, simply ruled that Spruce 1530 failed to prove its claims to the disputed niches. *See* Property Litigation, Findings of Fact and Conclusions of Law (Cohen J.), 12/14/16, at 7

---

[28] To the contrary, as discussed *supra* at page 14, the property litigation court denied Touraine's motion for non-suit.

(unnumbered). There was no indication of record that the property litigation court sanctioned Appellants for their conduct during the property litigation or warned them that their tactics were wrongful or abusive. There was no indication of record that Spruce 1530's counsel believed Appellants' conduct during the property litigation was improper or that Spruce 1530's property litigation claims would not prevail.

As to the trial court's findings concerning Appellants' lack of good faith in settlement and the effect of the prolonged litigation on Touraine's business, the record indicated Shapiro's refusal to compromise delayed one lease for a coffee shop by six months, for which the trial court awarded $22,800 in lost rent. *See* N.T., 4/7/21 (afternoon), at 94-99; Trial Court Opinion (Schulman, J.), 12/20/21, at 24. Touraine also presented evidence that the same delay affected its ability to charge or collect a total of $5,200 in amenity fees related to twenty-six other leases. *See* N.T., 4/7/21 (afternoon), at 54. The trial court elected not to impose damages for that loss because once Touraine completed its renovations, it could recoup those fees. *See* Trial Court Opinion (Schulman, J.), 12/20/21, at 24. Touraine presented no further evidence of lost business or other economic damages caused by the property litigation and/or Touraine's construction of the temporary firewall on its side of the property line.

In sum, we conclude that neither the record nor the law supported the trial court's findings to impose punitive damages. As stated above, we agree that the totality of the circumstances warranted the imposition of liability for

abuse of process. The trial court, however, misapprehended the legal bases of Appellants' property litigation claims, the record, and the law. The court's finding that Appellants instituted and prolonged the property litigation without cause was erroneous. The court's discussion of the exorbitant costs of delay did not demonstrate Appellants' outrageousness or conscious disregard of harm. With respect to punitive damages, these errors clearly affected the court's conclusion that Appellants' conduct was willful and outrageous. Accordingly, the trial court abused its discretion when imposing punitive damages against Appellants.[29] Thus, we vacate that portion of the verdict awarding Touraine punitive damages.

## Compensatory Damages

In their final issue, Appellants claim that the trial court lacked sufficient support in the record to award legal fees in the eight areas regarding the disputed niches.[30]

---

[29] We acknowledge the trial court had the opportunity to observe Shapiro's demeanor at the trial in the present action. As suggested by the court, Shapiro presented himself to be stubborn, uncompromising, and angry. **See** Trial Court Opinion (Schulman, J.), 12/20/21, at 14 (indicating that during cross-examination Shapiro "erupted in a loud and irate outburst, calling Pignataro a liar and denying he ever used the term 'adverse possession'" during their meeting), 16 (discussing Shapiro's flippant attitude toward judicial processes throughout the property litigation and the present action). However, Shapiro's irascible, contentious, and ill-tempered demeanor does not sustain the legal requirements of willful and outrageous conduct necessary to impose punitive damages.

[30] Specifically, the trial court assessed damages for legal expenses as follows:
*(Footnote Continued Next Page)*

The assessment of damages is peculiarly within the province of the factfinder and an award will not be upset on appeal unless it is so excessive as to shock the conscience of the court or it is clearly based on partiality, prejudice or passion. Generally, under Pennsylvania law, damages need not be proved with mathematical certainty, but only with reasonable certainty, and evidence of damages may consist of probabilities and inferences. Where the amount of damages can be fairly estimated from the evidence, the recovery will be sustained even though such amount cannot be determined with entire accuracy.

***Bailets v. Pennsylvania Turnpike Commission***, 181 A.3d 324, 336 (Pa. 2018).

Appellants assert that Touraine's evidence concerning its legal fees in the property litigation lacked support by competent evidence. ***See*** Appellants' First-Step Brief at 50. They note that Touraine's attorneys provided invoices based on "block billed" times and that Pignataro, who testified concerning the payment of legal bills associated with the eight areas, had insufficient personal

---

1. [L&I] appeals and related hearings - $14,338.

2. Discovery letter response - $9,179.

3. Noticing/cancelling depositions - $2,009.

4. Concealment of the 1998 property survey - $59,308.

5. Motion for summary judgment - $23,723.

6. [Appellants'] negligence claim - $49,225.

7. Post-trial motions - $60,389.

8. Appeal/withdrawal of appeal to Superior Court - $18,246.

Trial Court Opinion (Schulman, J.), 12/20/21, at 4. The court also awarded $52,000 for other expenses and losses related to the property litigation, including lost rent, ***see id***. at 4, 24, which Appellants do not dispute.

knowledge of the work performed and how to allocate "block-billed time," or how much additionally legal work Appellants' abuses caused when Touraine had also commenced suit in the property litigation. *See id*. at 50-51. Appellants conclude that the trial court's findings of compensatory damages bore no actual relationship to the actual work performed by Touraine's counsel. *See id*.

The trial court considered this claim as follows:

> With regard to the attorneys' fees, Mr. Pignataro explained that in order to determine which bills should be allocated to which abuse, he reviewed each invoice and allocated the time entries to the different abuses. Even though the firm used "block billing", because Pignataro was involved in each and every step of the underlying litigation, he was able to examine the time entries and context of each invoice in order to make a determine [sic]

> as to whether allocation to one of the areas of abuse was appropriate. He created a legend with a code for each abuse, which he then applied to the billing entries on the invoices. Those entries that were not applied to an abuse were redacted and excluded from the damages claimed. If he allocated an entry to more than one abuse, he divided the time evenly between the abuses. Pignataro admitted that his calculations were not without some amount of speculation given that years had passed since the underlying litigation. On cross examination, [Appellants'] counsel identified certain entries where Mr. Pignataro could not recall why [he] made the allocations he did, and it was within the discretion of the fact-finder to weigh and evaluate any discrepancies.

> The [trial c]ourt did not blanketly accept all of Mr. Pignataro's calculations in that it reduced two categories of damages by 70% each to account for any overestimation and did not award any amount in an additional area. While again, this is not mathematical precision, it does not have to be. It was well within the discretion of the fact-finder to determine whether his calculations were so flawed by speculation that they were not reliable and could not be adopted. This was clearly not the case.

Contrary to Appellant's argument, where the bulk of Mr. Pignataro's testimony supported his damages calculations, the Court was not constrained to reject the damages claim in its entirety; rather the Court was well within its discretion to accept or reject individual items to reach a well-reasoned decision concerning damages supported by the credible evidence.

Trial Court Opinion (Schulman, J.), 12/20/21, at 22-23 (internal citations to the record omitted).

Following our review, we discern no merit to Appellants' arguments that Pignataro's testimony was insufficient to provide a proper basis to calculate compensatory damages. Pignataro was intimately aware of the Appellants' conduct over the disputed niches and how it impacted Touraine and the property litigation. *See* N.T., 4/7/21 (afternoon), at 6, 14-34, 72-95. He testified that he personally reviewed and approved Touraine's attorneys' bills during the property litigation. *See id*. at 55. For the purpose of damages in the present action, he allocated and/or prorated his counsel's bill for the additional work he recalled or believed Appellants' abuses caused. *See id*. at 57-60. Touraine presented evidence of its bills indicating the hours it spent for items such as responding to Spruce 1530's conduct during discovery, the L&I appeal, Spruce 1530's motions for summary judgment, and for Spruce 1530's post-trial motions and appeal. *See id*. at 72-95. The trial court independently reviewed the claims for damages in each of the eight areas.

Appellants cite no supporting law suggesting that Pignataro's testimony was too speculative or unreliable to award damages and we have found none to support its contention. To the contrary, this Court has found a party's similar testimony about the legal expenses they paid to be sufficient. *Cf. Hart*

***v. O'Malley***, 781 A.2d 1211, 1220 (Pa. Super. 2001) (noting that a plaintiff's testimony regarding the amount and kind of attorney's fees she paid when defending herself against a wrongful action brought against her was sufficient to support the trial court's award of attorney's fees under the Dragonetti Act). Therefore, we conclude that no relief is due.

In sum, we affirm the trial court's pre-trial order dismissing Touraine's count for wrongful use of civil proceedings, the trial court's verdict holding Appellants liable for abuse of process and the award of compensatory damages. However, having concluded that the record was insufficient to support the trial court's imposition of punitive damages for outrageous or willful conduct, we vacate that portion of the verdict only.

Judgment affirmed in part and reversed in part. Case remanded for the entry of a judgment consistent with this decision. Application for substitution of party granted. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/16/2023