J-A18008-22

2022 PA Super 165

| | |
|---|---|
| JOHN M. OLSZEWSKI, AN ADULT INDIVIDUAL<br><br>Appellee<br><br>v.<br><br>IDA M. PARRY, KATHYRYN ALMA DUMBAULD, DONNA MAY STEELE, STEPHEN W. CARHART, VIRGINIA L. CARHART, JASON CORFIELD, CARRIE MCKENZIE AND TIMOFEY PINKEVICH<br><br>APPEAL OF IDA M. PARRY, KATHYRYN ALMA DUMBAULD, DONNA MAY STEELE, STEPHEN W. CARHART, VIRGINIA L. CARHART | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br>No. 1348 WDA 2021 |

Appeal from the Order Entered November 3, 2021
In the Court of Common Pleas of Beaver County
Civil Division at No: 10935-2018

BEFORE: STABILE, J., MURRAY, J., and McLAUGHLIN, J.

OPINION BY **STABILE, J.:**                    **FILED: SEPTEMBER 28, 2022**

Appellants, Ida M. Parry, Kathyryn Alma Dumbauld, Donna May Steele, Stephen W. Carhart and Virginia L. Carhart, appeal from an order (1) awarding Appellee John M. Olszewski an easement by necessity over a road known as Steele Drive, which runs over lands owned by Appellants, and (2) directing Appellant Parry to remove a fence from her land blocking access to Steele Drive. We affirm.

The parent tract of land in this case, which encompasses all relevant parcels, was 170.18 acres of land. In 1882, the parent tract was divided to create a 50-acre parcel, which is now known as Lot 177. The 1882 deed mentioned a 20-foot easement from Lot 177, but this language was not present in subsequent deeds.

The remaining 120 acres changed ownership multiple times throughout the years. In 1897, Robert McKnight purchased the 120-acre tract. In 1908, McKnight and his wife conveyed 61.5 of the 120 acres to William Ault. Through a series of conveyances between 1935 and 1939, Ault and his wife, Susan, subdivided the 61.5-acre tract into four lots of land: an 11-acre tract (known today as Lot 173), a 10-acre tract (known today as Lot 174), a 10-acre tract (known today as Lot 175) and a 30.5-acre tract. In 1973, the 30.5-acre tract was subdivided further by successor in title Eleanor Maxwell, who divided the tract into two equal lots, Lots 176 and 176.1. Maxwell's deed for Lot 176.1 reserved an easement to allow Lot 176's owners to cross Lot 176.1 to access Steele Drive, the sole means of access to the only public highway, McKenzie Road.

Today, Appellee owns Lots 176 and 176.1. Appellants own lots 173, 174 and 175 to the north of Appellee's lots. Steele Drive, a 20-foot wide private roadway, runs along the eastern edge of Lots 173, 174, and 175, and connects with McKenzie Road.

Appellee initiated this action on July 30, 2018, after Appellant Parry erected a gate that prevented Appellee from using Steele Drive to access Lots

176 and 176.1. In his third amended complaint, Appellee demanded the right to use Steele Drive to access Lots 176 and 176.1. Following discovery, the parties filed cross-motions for summary judgment. Appellee's motion requested, *inter alia*, an easement by necessity over Steele Drive.

On May 26, 2021, the trial court issued a memorandum opinion and order granting partial summary judgment to Appellee. The court held that Appellee established an easement by necessity over Steele Drive, because Lots 176 and 176.1 both became landlocked when Appellee's predecessor in title, the Aults, subdivided a larger tract of land into what is today known as Lots 173—176.1.

The court observed that it was only possible for Appellee to access McKenzie Road, a public road, by crossing property owned by a neighbor, Theresa Hradecky. Memorandum Opinion, 5/26/21, at 6. Hradecky gave uncontradicted testimony, however, that use of her land was both permissive and temporary. Hradecky Dep., 12/23/20, at 21-22, 32-33. Consistent with this testimony, the court determined that Appellee's current path of ingress and egress to his property "was by cross[ing] the neighboring Hradecky property. However, this right to cross is only permissive and was made with the intent of it being temporary." Memorandum Opinion at 6 n.1.

The court directed Appellant Parry to remove the gate so that Appellee could use his easement over Steele Drive. The court denied summary judgment to Appellee with respect to his request that the parties share equally in all costs associated with maintaining Steele Drive, because the court found

there were genuine issues of material fact regarding the parties' respective use of Steele Drive. The court denied the motions for summary judgment by Appellants Corfield and McKenzie.

On June 7, 2021, Appellants filed a motion for stay and to add indispensable parties, which the trial court treated as a motion for reconsideration of its May 26, 2021 order. On June 23, 2021, the court reaffirmed its decision that the elements for an easement by necessity were present.

In November 2021, the court conducted a nonjury trial on the issues of location and maintenance of the easement over Steele Drive. On November 3, 2021, the court held, *inter alia*, that Appellee had:

> [s]ustained his burden of proof of a 20-foot easement, presently known as Steele Drive, to commence at the northeast corner of his property, known as Lot 176.1 in Hanover Township, Beaver County, Pennsylvania, and to continue across the northeast border of each of Lot 175 [], Lot 174 [], Lot 173 [], and Lot 163.4 [] until its intersection with McKenzie Road, a public roadway. This 20-foot easement was initially established by deed in 1882 in a 170 acre plot of land, which at that time included all of the above-referenced lots/properties, and was referenced in some, but not all, later deeds. It was also noted as Steel Drive on some maps in evidence. This determination is based upon the testimony of [Appellee's] expert, Gary Shefler, who[m] the Court found to be credible, as well as the testimony of other witnesses. [Appellants'] own expert, Amy Hopkins, testified to a location of the easement consistent with the testimony of [Appellee's] expert.

Order, 11/3/21, at 2.

On November 12, 2021, without filing post-trial motions, Appellants filed a notice of appeal to this Court from the May 26, 2021 opinion and order, the

June 23, 2021 order, and the November 3, 2021 order. On November 16, 2021, the court entered an order that Appellants' notice of appeal should be stricken because of Appellants' failure to file post-trial motions.

On February 1, 2022, Appellee filed an application in this Court to quash the appeal due to Appellants' failure to file post-trial motions. On March 17, 2022, this Court granted Appellee's application "only to the extent that the portion of the appeal from the [November 3, 2021 order] is quashed due to Appellants' waiver of issues for failure of Appellants to file post-trial motions after entry of the non-jury decision of the trial court." Order, 3/17/22, at 1. We denied the remainder of Appellee's application without prejudice to raise the issue again in his appellate brief. *Id.*[1]

Appellants raise a single issue on appeal:

> Did the Trial Court err as a matter of law and/or abuse its discretion by concluding in summary judgment that an easement by necessity existed, thereby granting in part summary judgment in favor [of Appellee], allowing him the right to use Steele Drive as an easement by necessity, and requiring Appellants to remove the gate on Steele Drive[?]

Appellants' Brief at 8.

Preliminarily, Appellee argues that Appellants waived their objection to the court's May 26, 2021 partial summary judgment order by failing to file post-trial motions before taking this appeal. We decline to find waiver.

---

[1] We further directed Appellants to reduce the November 3, 2021 order to judgment. On March 22, 2022, Appellants filed a praecipe to enter judgment on this order.

The law is clear that post-trial motions may not be filed pursuant to an order deciding a motion for summary judgment. Pa.R.Civ.P. 227.1(c), *Note*; ***DiGregorio v. Keystone Health Plan East***, 840 A.2d 361, 365 (Pa. Super. 2003). Furthermore, when the court grants a pretrial motion for summary judgment, but other claims go to trial, the party that lost the summary judgment motion is not required to file post-trial motions objecting to the summary judgment order. ***B.K. v. Chambersburg Hosp.***, 834 A.2d 1178, 1180-81 (Pa. Super. 2003) (where court granted summary judgment to one defendant prior to trial, and case proceeded to trial against other defendant, plaintiff was not required to file post-trial motions objecting to summary judgment order to preserve challenge to summary judgment for appeal).

***B.K.*** is directly on point with the present case. The court entered summary judgment against Appellants as to the existence of the easement by necessity. The case proceeded to trial to determine the location of the easement and other matters unrelated to its existence. The only issue raised in this appeal is the existence of the easement, an issue decided in the summary judgment order. Thus, it was not necessary for Appellants to file post-trial motions to preserve this issue for appeal.

Appellee insists that Appellants were required to file post-trial motions because the court ruled on the existence of the easement during trial, not just its location. In support of this claim, Appellee cites a phrase from the trial court's November 3, 2021 order that Appellee "[s]ustained his burden of proof

of a 20-foot easement, presently known as Steele Drive . . ." Order, 11/3/21.

In our view, Appellee lifts this phrase out of context. The sentence containing

this phrase states that Appellee

> [s]ustained his burden of proof of a 20-foot easement, presently known as Steele Drive, to commence at the northeast corner of his property, known as Lot 176.1 in Hanover Township, Beaver County, Pennsylvania, and to continue across the northeast border of each of Lot 175 [], Lot 174 [], Lot 173 [], and Lot 163.4 [] until its intersection with McKenzie Road, a public roadway.

*Id.* This sentence concerns the location of the easement (a trial issue), not

its existence (the summary judgment issue). Since nothing in the November

3, 2021 order concerned the existence of the easement, *B.K.* controls, and

Appellants were not required to file post-trial motions in order to preserve the

existence issue for appeal.

Appellee also argues that post-trial motions were necessary because the

parties introduced new evidence and testimony during trial. Appellee's Brief

at 16 (citing *G&G Investors, LLC v. Phillips Simmons Real Estate*

*Holdings, LLC*, 183 A.3d 472, 477 (Pa. Super. 2018)). The only new

evidence introduced during trial, however, concerned the location of the

easement, not its existence. Thus, once again, Appellants were not required

to file post-trial motions.

Because waiver does not apply, we turn to the substance of Appellant's

appeal, a challenge to the order of summary judgment in Appellee's favor as

to the existence of an easement by necessity.

In reviewing a trial court's grant of summary judgment:

[W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

***True Railroad Realty, Inc. v. McNees, Wallace & Nurick, LLC***, 275 A.3d

490. 494 (Pa. Super. 2022).

The three fundamental requirements for an easement by necessity are:

1) the titles to the alleged dominant and servient properties must have been held by one person; 2) this unity of title must have been severed by a conveyance of one of the tracts; and 3) the easement must be necessary in order for the owner of the dominant tenement to use his land, with the necessity existing

- 8 -

both at the time of the severance of title and at the time of the exercise of the easement.

***Bartkowski v. Ramondo***, 219 A.3d 1083, 1092 (Pa. 2019). "A right of way from necessity over the land of another ... is always of strict necessity." ***Id.*** Thus, a right of way never exists "when a man can get to his own property through his own land," and "[c]onvenience is no foundation for the claim." ***Id.***

"Strict necessity," however, does not require a party to prove "utter impossibility of alternative access." ***Id.*** at 1096. "Where it is manifestly impracticable, even though theoretically possible, to create ingress and egress across one's own property, the landowner may establish that a right of way over a neighboring property is 'strictly necessary' in the legal sense." ***Id.*** at 1094. "Determining whether a landowner has established necessity is a fact-intensive question, which defies a one-size-fits-all, bright-line standard." ***Id.*** at 1096. "The central inquiry is whether, absent the recognition of an easement, the proposed dominant estate will be left without a means of ingress and egress, rendering the property inaccessible and, thus, unusable." ***Id.*** When property conveyed is situated in a manner such that access to it from a public road cannot be had except by passing over the remaining land of the grantor, the grantee is entitled to an easement by necessity over the land of the grantor. ***Price v. Musselman***, 493 A.2d 1389, 1392 (Pa. Super. 1985).

In this case, the evidence satisfies the first easement by necessity element, because the titles to the dominant and servient properties were both held by a common grantor, McKnight. In 1897, McKnight obtained title to the

120-acre tract, which encompassed the 61.5-acre tract that was later subdivided into Lots 173, 174, 175, 176, and 176.1. Since the 61.5-acre tract was carved out of the larger 120-acre tract, unity of ownership existed as to both the dominant and servient estates.

The evidence also satisfies the second easement by necessity element, because unities of title were severed by McKnight when he subdivided the 61.5-acre tract from the 120-acre tract in his 1908 deed to Ault.

The evidence also satisifies the third and final element of necessity, because the necessity to use the easement existed at the time of severance of title in 1908 and continues to exist to this day. At the time McKnight subdivided the 120-acre tract, the only means of accessing McKenzie Road, the nearest public highway, was by and through the 20-foot right-of-way known today as Steele Drive. The 61.5-acre tract that McKnight conveyed to Ault was landlocked and had no means of access to McKenzie Road or any other public highway except by this right of way.

Appellants argue that the 61.5-acre tract continuously had access to another public highway, Petrilla Drive, through a farm lane running through other lands owned by the Aults (modern-day Lot 177). Appellants' Brief at 41-42. In support of this theory, Appellants cite to a 1995 deed in the chain of title for Lot 177, which includes the following language:

> Also an easement of right of way over, across, and along the farm lane presently connecting [Lot 177] with Hanover Township Road No. 454... This conveyance is being made in recognition of the fact that said farm lane has been used continuously by the

> Grantees herein and their predecessors in title for a period well in excess of thirty-five (35) years.

Appellee's Third Amended Complaint, Exhibit 2. We disagree. The grantees in the 1995 deed merely stated that they used the farm lane for over 35 years, *i.e.*, before 1960. McKnight, however, subdivided the 120-acre in 1908, 52 years before 1960. The 1995 deed does not establish that the Aults had access to Lot 177 via the farm lane at any point in time between 1908 and 1960. This fifty-two year gap defeats Appellants' claim that the 61.5 acre tract had continuous access to Petrilla Drive.

The necessity created in 1908 continues to this day, because Lots 176 and 176.1 are still landlocked and without legal access to a public highway. It is of no consequence that the 61.5-acre tract was subdivided further into Lots 173, 174, 175, 176 and 176.1. As with any other easement, an easement by necessity passes by conveyance of the estate to which it is appurtenant. *Lauderbach Zerby Co. v. Lewis*, 129 A. 83, 84 (Pa. 1925); *Rusciolelli v. Smith*, 171 A.2d 802, 806 (Pa. Super. 1961) ("an easement appurtenant is assignable and divisible as the dominant tenement may be divided and transferred and the owner of any part of the dominant tenement may claim the easement so far as it is applicable to his part of the property, provided the easement can be enjoyed as to the separate parcels without any additional burden upon the servient tenement"). Furthermore, an easement by necessity continues in perpetuity for as long as the necessity exists. *Youst v. Keck's Food Service*, 94 A.3d 1057, 1075 (Pa. Super. 2014). The trial

court correctly found that an easement by necessity arose over Steele Drive in 1908 as to the entirety of the 61.5-acre tract conveyed by McKnight to Ault. This easement passed with each subsequent division of this tract because the necessity continued to exist for each subdivision.

Further evidence of continued necessity relative to Lots 176 and 176.1 arises from the deeds in the chain of title. In 1973, Eleanor Maxwell subdivided 30.5 acres of land into Lots 176 and 176.1. The deed for Lot 176.1 reserved an easement for the benefit of Lot 176 to allow its owners to cross Lot 176.1 to access Steele Drive, which provided the only means of access to McKenzie Road, the only public highway. Maxwell's express easement demonstrates that Steele Drive was the only means of access to McKenzie Road for Lots 176 and 176.1.

Today, both Lots 176 and 176.1 remain landlocked. Neither abuts a public road, and there is no express easement in the record providing either lot with permanent legal access. The trial court correctly observed that Appellee's right to cross Hradecky's property is permissive only and was intended to be a temporary privilege.

For these reasons, the trial court correctly held that Appellee satisfied all three elements establishing an easement by necessity. We affirm the order

J-A18008-22

granting partial summary judgment to Appellee on the easement by necessity issue and directing Appellant Parry to remove the fence from her land.[2]

Order granting partial summary judgment affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/28/2022

---

[2] As noted above, the remainder of the appeal was quashed in our March 17, 2022 order.