J-A02031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JORDAN SALAZAR LOBATO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DOMMEL PLUMBING AND HEATING, | : | No. 765 MDA 2023 |
| INC. AND G C/M, INC. | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| IRON VALLEY CEILINGS, LLC AND | : | |
| J&C DRYWALL | | |

Appeal from the Order Entered May 4, 2023
In the Court of Common Pleas of Lancaster County
Civil Division at No(s): CI-20-06502

BEFORE: NICHOLS, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:　　　　**FILED: JULY 15, 2024**

Jordan Salazar Lobato ("Lobato") appeals from the order granting summary judgment in favor of Dommel Plumbing and Heating, Inc. ("Dommel"), and G C/M, Inc. ("GCM"), Iron Valley Ceilings LLC ("Iron Valley"), and J&C Drywell ("J&C") (collectively, "Appellees") in Lobato's negligence action. We affirm.

Lobato was "working as a laborer at a McDonald's restaurant renovation project" in Lancaster County. Lobato's Amended Complaint, 1/13/21, at 3. Lobato was hanging drywall while standing on top of scaffolding. **See** Deposition of Lobato, 1/11/22, at 94-100. The scaffolding was on a level,

concrete floor, with its wheels locked, located approximately twelve to sixteen inches from a partially covered, backfilled, plumbing trench. *See id*. at 97-100; Lobato's Expert Report, 11/28/22, at 7-10. Lobato was looking up at the area where he was installing drywall when he "felt an impulse in [his] stomach" and realized he was falling backward. Deposition of Lobato, 1/11/22, at 100. As Lobato fell, he "hit the scaffold," "rebounded," landed "on the opposite side," and, after the immediate shock passed, observed, "[b]oth the scaffold as well as myself [*sic*] were both in the hole area." *Id*. at 101, 149-50. Lobato suffered injuries to his back, neck, and left arm. *See id*. at 108-11.

Lobato filed the instant, negligence action against Dommel,[1] claiming he suffered an injury "when the leg of the scaffold fell into an unprotected opening in the floor[.]" Lobato's Amended Complaint, 1/13/21, at 5. In his amended complaint, Lobato added Appellee GCM[2] as a defendant, making the same allegation against them. *See id*. GCM filed a joinder complaint against Iron Valley, the subcontractor responsible for drywall, framing, and ceiling installation. *See* Trial Court 1925(a) Opinion, 8/7/23, at 2. Iron Valley

_____

[1] Dommel was a subcontractor responsible for the plumbing work. *Id*.

[2] GCM was the general contractor on the project. *See* Trial Court 1925(a) Opinion, 8/7/23, at 2.

- 2 -

subsequently filed a joinder complaint against sub-subcontractor J&C, who contracted with Lobato. *See id*. at 3.

All Appellees moved for summary judgment. Following oral argument, the trial court granted their motions. The court reasoned Lobato had failed to show Appellees' alleged negligence that leaving the trench uncovered was the proximate cause of his fall. *See* Trial Court Opinion on Summary Judgment, 5/4/23, at 5-9. This timely appeal followed.[3]

Lobato raises the following issues for review:

1. Whether the trial court erred as a matter of law in granting summary judgment to [Appellees] and concluding [Lobato] failed to establish sufficient evidence of proximate cause where there remained genuinely disputed issues of material fact as to whether [Appellees'] failure to provide an OSHA-compliant cover for the plumbing trench was the proximate cause of [Lobato's] injuries [] suffered when the scaffold he was working from shifted into the unprotected plumbing trench[?]

2. Whether the trial court committed reversible error in concluding that a jury would be required to rely on guess or conjecture as to the cause of [Lobato's] accident by disregarding the direct and circumstantial evidence of record, including [Lobato's] testimony that both he and the scaffold fell into the trench, photographs taken at the accident scene, and the statements and testimony of [Appellees'] witnesses as to their consistent understanding of [Lobato's] accident, upon which a jury could reasonably conclude that [Lobato's] scaffold fell into the unprotected plumbing trench and that [Appellees'] failure to securely cover the trench was a proximate cause of [Lobato's] injuries[?]

3. Whether the trial court committed reversible error by failing to consider and give proper deference to the opinions and conclusions set forth in [Lobato's] expert report that, based on the factual record, the failure to securely cover the plumbing trench

_____

[3] Lobato and the trial court complied with Pa.R.A.P. 1925.

- 3 -

on the construction jobsite, in violation of OSHA construction safety regulations and [GCM's] own safety policies, was a cause of [Lobato's] accident[?]

4. Whether the trial court committed reversible error and usurped the jury's role as factfinder in its analysis of Section 433 of the Restatement (Second) of Torts, by undertaking to weigh the evidence and erroneously applying the factors in a manner inconsistent with their purpose to conclude that [Lobato] had failed to demonstrate [Appellees'] conduct was a substantial factor in causing his injuries[?]

5. Whether the trial court committed reversible error by failing to apply the standard of review on summary judgment relying on ***Arcidiacono v. Timeless Towns of the Americas, Inc.***, 526 A.2d 804 (Pa. Super. 1987), which was decided on appeal after a jury verdict for the defense[?]

Lobato's Brief at 9-10 (unnecessary capitalization omitted, issues reordered, citation format corrected).[4]

All Lobato's issues challenge the trial court's grant of summary judgment. This Court's standard of review requires we reverse a grant of summary judgment only if the trial court commits an error of law or abuses its discretion. ***See Truax v. Roulhac***, 126 A.3d 991, 996 (Pa. Super. 2015) (*en banc*). Our scope of review is plenary, and we must examine the entire record. ***See Donegal Mut. Ins. Co. v. Fackler***, 835 A.2d 712, 715 (Pa. Super. 2003).

It is well settled "summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of

---

[4] For ease of disposition, we reordered Lobato's second and third issues.

- 4 -

material fact and that the moving party is entitled to judgment as a matter of law." **See Truax**, 126 A.3d at 996 (internal citation and quotation marks omitted). "[A] record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense." **Olszewski v. Parry**, 283 A.3d 1257, 1263 (Pa. Super. 2022) (internal citation omitted) (italics added). A court must examine the factual record of a case, including expert reports, in a light most favorable to the non-moving party. **See Brown v. City of Oil City**, 294 A.3d 413, 427 (Pa. 2023); **Bourgeois v. Snow Time, Inc.**, 242 A.3d 637, 652 (Pa. 2020) (also noting a court may not *sua sponte* undermine an expert's opinion when it has sufficient support).

To establish a claim of negligence, a plaintiff must prove: (1) the defendant owed him a duty of care; (2) the defendant breached that duty; (3) causation between the conduct and the resulting injury; and (4) actual damage to the plaintiff. **See Newell v. Montana West, Inc.**, 154 A.3d 819, 822 (Pa. Super. 2017). To establish a *prima facie* case of negligence, the plaintiff must establish a causal connection between defendant's conduct and the plaintiff's injury, even when the record demonstrates the defendant breached a duty of care owed to the plaintiff. **See Hamil v. Bashline**, 392 A.2d 1280, 1284 (Pa. 1978); **Straw v. Fair**, 187 A.3d 966, 993 (Pa. Super. 2018).

Causation has two components: (1) cause-in-fact and (2) legal or proximate cause. *See Pomroy v. Hosp. of University of Pennsylvania*, 105 A.3d 740, 745 (Pa. Super. 2014) (internal citation omitted). Cause-in-fact means the plaintiff would not have suffered a harm "but-for" the defendant's alleged negligence. *See First v. Zem Zem Temple*, 686 A.2d 18, 21 n.2 (Pa. Super. 1996). Proximate cause requires the defendant be a "substantial factor" in bringing about the harm suffered by the plaintiff. *Straw*, 187 A.3d at 993 (internal citation omitted).

As our Supreme Court has noted:

> The determination of the issue [of proximate cause] involves the making of a judgment as to whether the defendant's conduct although a cause in the "but for" sense is so insignificant that no ordinary mind would think of it as a cause for which a defendant should be held responsible. Section 431, comment a, Restatement [(Second) of Torts], explains the distinction between substantial cause and cause in fact as follows:
>
> "The word 'substantial' is used to denote the fact that the defendant's conduct has such an [e]ffect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called 'philosophic sense,' yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes."

*Ford v. Jeffries*, 379 A.2d 111, 114 (Pa. 1977) (internal citations omitted).

"[T]he concept [of proximate cause], like that of negligence itself, was

designed not only to permit recovery for a wrong but to place such limits upon liability as are deemed socially or economically desirable from time to time."

*Straw*, 187 A.3d at 994 (internal citation and quotation marks omitted). Factors relevant to the consideration of proximate cause include:

> the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it; whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; [and the] lapse of time.

*Id*. at 994-95 (quoting Restatement (Second) of Torts § 433) (quotation marks and subdivision markings omitted).

As a threshold matter, we first consider the trial court's conclusion that Lobato properly pled that all Appellees, including Dommel, Iron Valley and J&C breached a duty they owed to Lobato.[5]  **See** Trial Court 1925(a) Opinion, 8/7/23, at 5.  While we agree with the trial court's conclusions that all Appellees are entitled to summary judgment, we do not agree Dommel, Iron Valley, and J&C breached a duty to Lobato.

Pennsylvania Rule of Civil Procedure 1035.3 states in pertinent part:

> (a) . . . the adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response . . . identifying

_____

[5] **See Lynn v. Nationwide Ins. Co.**, 70 A.3d 814, 823 (Pa. Super. 2017) ("we may affirm a trial court's ruling on any basis supported by the record on appeal").

(1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion . . .

Pa.R.C.P. 1035.3(a)(1).

It is well-settled that:

> **[f]ailure of a non[-]moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.**

**Thompson v. Ginkel**, 95 A.3d 900, 904 (Pa. Super. 2014) (internal citation omitted, emphasis added). Thus, "parties seeking to avoid the entry of summary judgment against them . . . are required to show, by depositions, answers to interrogatories, admissions, or affidavits, that there is a genuine issue for trial." **Wash. Fed. Sav. & Loan Ass'n. v. Stein**, 515 A.2d 980, 981 (Pa. Super. 1986).

Although Lobato named Dommel as a defendant in the amended complaint, he admitted Dommel was **not** responsible for creating the plumbing trench. **See** Amended Complaint, 1/12/21, at 5. He acknowledged Dommel, "was not actively working in or passing plumbing materials through the [trench]," at the time of the accident. **Id**. Instead, he argued Dommel "failed to cover the hazardous opening in the floor, so as to protect other workers, such as [Lobato] from the risk of injury[;]" and Dommel "had a duty to exercise reasonable care to avoid creating a hazardous condition posing

- 8 -

unreasonable risk of serious bodily injury to other individuals working on the jobsite[.]" ***Id***.

However, in his response to Dommel's motion for summary judgment, Lobato failed to introduce any evidence to support the above contentions. Lobato's expert report barely mentions Dommel and opines ***GCM, not Dommel***, was responsible for Lobato's injury. ***See*** Expert Report, 11/28/22, at 24-27. To the extent the expert report mentions Dommel at all, it cites the deposition testimony of the sole Dommel employee on the site, Ronald Moore ("Moore"), for the following propositions: (1) the project was "particularly condensed" and the work scene was busy; (2) GCM employee Justin Fields "was running the job;" (3) Moore "probably" laid out where the trench needed to be located, but he was not responsible for digging the trench; (4) Moore was not responsible for back-filling or covering the trench, rather, "that's what [GCM] was there to do;" and (5) Moore did not witness Lobato's fall. ***Id***. at 7-9.

Lobato also admits Moore was not responsible for cutting the trench. ***See*** Lobato's Response in Opposition to Dommel's Motion for Summary Judgment, 11/28/22, at 6. To support his contentions of Dommel's liability, Lobato relies on Moore's acknowledgment that open trenches pose a safety hazard, and were a violation of OSHA standards, and that he did not cover the trench. ***See id***. at 6-7. However, Lobato does not point to any evidence of record which indicates Moore had any involvement in directing workers on the

jobsite to work in proximity to the trench or to contradict Moore's deposition testimony **GCM** was responsible for back-filling and covering the trench, and Moore's only job on the worksite was to "lay the pipe." Deposition of Moore, 6/27/22, at 54. Simply put, Lobato does not point to any evidence in his response to summary judgment, other than a generalized statement indicating everyone on a worksite is responsible for safety, to demonstrate Dommel breached any duty it may have owed to Lobato. **See** Lobato's Response in Opposition to Dommel's Motion for Summary Judgment, 11/28/22, at 6-7.

As to Iron Valley and J&C, Lobato did not name them as defendants in his amended complaint. **See** Amended Complaint 1/12/21, at 1-20. After they were joined as additional defendants by GCM and Iron Valley, Lobato did not seek to amend his complaint to include any allegations against them. We have thoroughly reviewed the record and see nothing which indicates Lobato ever sought discovery from either Iron Valley or J&C.[6] In his responses to Iron Valley's and J&C's motions for summary judgment and in his briefs, Lobato does not set forth any basis for liability against Iron Valley or J&C, point to any evidence which supports a finding of liability against them, or notes a specific duty they allegedly breached. **See** Lobato's Response and Brief in Opposition to Iron Valley's Motion for Summary Judgment, 12/5/22,

---

[6] In fact, we see nothing of record which indicates either Dommel or GCM ever sought discovery from either Iron Valley or J&C.

- 10 -

at 1-8 and 1-22; Lobato's Response and Brief in Opposition to J&C's Motion for Summary Judgment, 12/5/22, at 1-8 and 1-25. Instead, in both briefs, Lobato argues GCM and/or Dommel is liable for his accident. *See* Lobato's Brief in Opposition to Iron Valley's Motion for Summary Judgment, 12/5/22, at 11-12, 14-16, 21; Lobato's Brief in Opposition to J&C's Motion for Summary Judgment, 12/5/22, at 11-12; 14-16. Further, in his brief, Lobato does not make any argument that specifically relates to either Iron Valley or J&C or indicate why they were not entitled to summary judgment. *See* Lobato's Brief, at 27-82.

For the reasons discussed above, we conclude Lobato failed to show a genuine issue of material fact exists showing Dommel, Iron Valley, and/or J&C either had a duty or breached any alleged duty to him. Lobato has thus not shown the trial court erred in granting summary judgment in their favor regarding these three defendants. *See Thompson*, 95 A.3d at 904; *Wash. Fed. Sav. & Loan Assn.*, 515 A.2d at 981.

In accordance with the preceding discussion, we analyze Lobato's issues only with respect to his claims against GCM. In so doing, we examine Lobato's first and second claims together, as both contend the trial court erred in its proximate cause determination, usurped the jury's function as the finder-of-fact, and that the evidence when viewed properly, "more than sufficiently established the factual cause of his accident was the open plumbing trench." Lobato's Brief, at 27; *see id*. at 29-37; 46-60.

For purposes of summary judgment, the trial court assumed GCM owed a legal duty to Lobato, it breached that duty, and Lobato suffered actual damages from his injuries. **See** Trial Court 1925(a) Opinion, 8/7/23, at 5. However, the trial court found Lobato had not established causation against GCM. **See** Trial Court Opinion on Summary Judgment, 5/4/23, at 6-9. The trial court aptly discussed the evidence and its reasoning as follows:

> Assuming *arguendo* [GCM[7] was] negligent in leaving the trench uncovered, [Lobato] has not provided evidence or explanation of any kind to show how the wheel of the scaffolding came in contact with the trench. In his deposition, [Lobato] states he was aware of the trench, "[a]nd of course, every eye was able to see the huge hole that you are referring to." [Lobato] explained [] he assembled the scaffolding in question himself; he placed the wheels into the bottom of the scaffolding and then locked all four wheels before using said scaffolding. After completing the day[']s work, [Lobato] left the scaffolding assembled on site, and would check its condition the next morning before resuming work. On . . . the day of the incident[, Lobato] was utilizing his scaffolding to hang sheetrock on the ceiling for approximately four hours. In the course of his work, he had to move the scaffolding twice, and noted that the ground touching the wheels was flat. He further state[d] when he moved the scaffolding the second time[,] he was approximately twelve to sixteen inches from the mouth of the trench. As [Lobato] attempted to screw in a portion of drywall immediately preceding the incident,
>
> > I had my eyes up. I was looking up towards the area of the metal where I was going to screw it in. And I felt an impulse in my stomach. When I looked, I already saw myself in the air. As I was going in the air, I was going like so — backwards.

---

[7] As noted, the trial court addressed the alleged negligence of all the Appellees.

- 12 -

After he fell, he found himself in the trench and sustained injuries to his back, neck, and left arm.

* * * * *

[Lobato] repeatedly asserts [] the incident occurred "when the leg of the scaffold fell into an unprotected opening in the floor, causing him to fall from the scaffold platform and suffer the serious injuries described herein." [*See*] . . .[Lobato's] Resp. to Def Dommel Plumbing and Heating, Inc.'s Mot. for Summ. J. at 3 ("[] Dommel misleadingly disregards the factual record in this case establishing [Lobato's] accident occurred when he was working from a scaffold and the leg of the scaffold shifted into an open plumbing trench, causing him to fall and suffer injuries."). However, as stated by [Lobato], he was looking up while working, he does not know why or how he fell, and there were no witnesses to the incident. [Lobato] offers no explanation for how the locked wheel of the scaffolding moved twelve to sixteen inches from where he was working, thus causing his injury. While it's possible [] the scaffolding moved as he was working and eventually shifted into the trench, that still does not show what caused the scaffolding to move; the existence of the trench, negligent or otherwise, did not cause the scaffolding to move by its mere existence. Moreover, because [Lobato] does not know what caused his fall, there is no way to determine what other factors, if any, including [Lobato's] own actions or inactions, contributed to producing the incident and resulting injuries[.] . . .

* * * * *

"[T]he trial court has a duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess[,] or speculation." *Farnese v. Se. Pennsylvania Transp. Auth.* ["SEPTA"], 487 A.2d 887, 890 (Pa. Super. 1985). In the instant matter[,] that is exactly what [Lobato] is trying to accomplish. If the question of causation was put to a jury, the only way a determination could be made [] the open trench was a substantial factor, and therefore the proximate cause of, [Lobato's] injuries would be through speculation or conjecture. [Lobato] has failed to establish proximate cause in the present case[.]

Trial Court Opinion, 5/4/23, at 6-9 (most record citations omitted).

Having thoroughly reviewed the record, we find no error in the trial court's ruling. No one witnessed Lobato's fall.[8] Lobato's own testimony established he set up the scaffolding twelve-to-sixteen inches away from the trench, on solid, flat concrete (not on the portion of the trench covered in plywood). *See* Deposition of Lobato, 1/11/22, at 94-100. Lobato does not know what caused the fall and never testified he felt the scaffolding move, only that the result of the fall was he rebounded, and he and the scaffolding ended up on the opposite side in the trench area. *See id*. at 100-01. While Lobato claims on appeal "his scaffold fell into the open plumbing trench" and "the scaffold shifted into the trench[,]" he does not cite to anything in the record to support this claim. Lobato's Brief at 34.

Lobato also argues his testimony "logically and reasonably" supports the conclusion "the scaffold shifted into the trench" *id*. at 34 and maintains this "is consistent with . . . [the] photographs of the accident[.]" *Id*. at 51 (citing the reproduced record at 557a-58a, 570a, 1024a-26a, 1165a-66a, 1302a-11a). We have reviewed the photographs in question, and they do not support Lobato's position. None of the photographs show Lobato or the scaffolding

_____

[8] During a telephone interview, GCM employee, Justin Fielding, indicated an unnamed employee of the electrical subcontractor told him he witnessed the incident. Telephone Interview with Justin Fielding, 11/8/19, at 9-10. However, even if the employee had been identified and interviewed, it appears his testimony would not have afforded Lobato relief, as the employee told Fielding that Lobato caused the accident by moving the scaffolding in an improper manner, directly contradicting Lobato's deposition testimony. *See id*. at 10; Deposition of Lobato, 1/11/22, at 94-101.

falling or in the trench. They appear to show the aftermath of the incident, with Lobato lying on the concrete floor next to the narrow trench with one arm flung across it. The scaffolding is also lying *across* the trench, not in it. At most, a single wheel touches the interior lip of one side of the trench.

Moreover, Lobato's reliance on the testimony of Fielding, Moore, and GCM employee Robert Geiger ("Geiger") is misplaced. None of the men witnessed the accident; in fact, Geiger was not even present at the job site. **See** Telephone Interview of Fielding, 11/8/19, at 6, Deposition of Moore, 6/27/22, at 91; Deposition of Geiger, 1/10/22, at 42-43. At his deposition, Geiger relied on an unsigned statement he wrote within days of the incident in which he said Fielding told him, "a guy from Iron Valley apparently rolled a [] scaffold into a small trench and hurt his elbow. [Fielding] stated they could not communicate with the guy . . . because he could not speak or understand English." Statement by Geiger, 11/19, at 1 (unnumbered); **see also** Deposition of Geiger, 1/10/22, at 43-44. Assuming *arguendo* Geiger's testimony is admissible, Geiger's summarization of Fielding's statement is not consistent with either Fielding's testimony regarding the events or with Lobato's own testimony.

Fielding's deposition and telephone interview testimony are equally unhelpful. Fielding testified it was his understanding Lobato was working on the scaffold on the plywood cover and it "tipped over" or "rolled off the plywood." Deposition of Fielding, 1/10/22, at 58. However, in an earlier

telephone interview, Fielding testified it was difficult to ascertain what happened because of the language barrier and because he heard, "multiple different stories." Telephone Interview of Fielding, 11/8/19, at 8. Fielding also alternately claims he was told another Iron Valley (or J&C employee) was pushing Lobato on the scaffolding when a wheel went into the trench and/or Lobato was pushing himself, while on top of the scaffolding along the ceiling when a wheel went into the trench. *See id*. at 6-7.

Unlike Lobato, Geiger was not present at the worksite and Fielding did not witness the accident, and their secondhand information flatly contradicts Lobato's own testimony of what occurred.[9] Moreover, this testimony does not show the trench was the proximate cause of the accident but rather Lobato's and/or another J&C employee's using the scaffolding in an unsafe, improper manner was the proximate cause.

Lobato argues that the trial court improperly read *Farnese*, *supra*, as requiring a plaintiff to make a preponderance showing that the evidence of causation outweighs the inference the defendant's negligence did not cause the injuries. *See* Lobato's Brief at 56-57. In *Farnese*, we stated:

> To prove possibility only or to leave the issue to surmise or conjecture is never sufficient to sustain a verdict. Where there is no evidence of or the evidence is insufficient to justify an inference

---

[9] We note during his deposition, GCM's attorney specifically questioned Lobato about an ambulance report which stated the incident occurred while the "patient was standing on scaffolding while it was being moved[.]" Deposition of Lobato, 1/11/22, at 110. Lobato stated the report was incorrect. *Id*.

of negligence and causation, the court will direct a verdict in favor or the party against whom liability is sought.

\* \* \* \* \*

While we acknowledge that questions of negligence and causation are to be resolved by the jury, and not the judge, the question of the sufficiency of the evidence *before **presenting a question to the jury*** is clearly within the discretion of the trial judge. In fact, the trial court has a duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation.

*Id*. at 889-90 (citations omitted) (emphasis added). ***See also Houston v. Republican Athletic Ass'n.***, 22 A.2d 715, 716 (Pa. 1941) (affirming the entry of a compulsory nonsuit for a suit alleging negligence caused a man's fatal fall down stairs where the appellant failed to produce evidence negligence was the only reasonable explanation for the man's death; concluding a finding of negligence "would, at most, represent nothing but a mere guess or conjecture").

We see nothing in the instant matter to differentiate it from either ***Farnese*** or ***Houston***. Lobato hypothesizes a scaffold with locked wheels rolled into the trench and caused his fall, there is no testimony to indicate that someone unlocked the wheels or physically moved the scaffolding. Thus, there is no direct evidence to support this contention, and the circumstantial evidence, including Lobato's own testimony regarding the incident, is "at least equally consistent with theories of the case attributing the accident to a variety of causes[.]" ***Houston***, 22 A.2d at 716; ***see also Farnese***, 487 A.2d at 889-90. Lobato's first issue does not merit relief.

- 17 -

Lobato's second issue, that the trial court usurped the jury's fact-finding function, is equally unavailing.[10]  Lobato's claims rest entirely on the unsupported assumption that the scaffolding rolled into the trench and then tipped over.  Lobato's Brief, at 51-55.  As discussed in detail above, the record is simply devoid of direct evidence it did so.  Moreover, to support this contention, Lobato "cherry-picks" through the statements of Moore, Geiger, and Fielding (none of whom witnessed the accident), while utterly disregarding his own sworn statements contradicting those statements.  *See id*.  As the Supreme Court stated in affirming the grant of a non-suit when a plaintiff could not prove the defendant's negligence caused her injury,

> plaintiff[] failed to prove the proximate cause of her injury, *i.e.*, she failed to prove that her fall and injury was due to some particular negligence of the defendant—what caused her to fall could only be a guess, and that is not sufficient to take a case to the jury.

***Watkins v. Sharon Aerie No. 327 Fraternal Order of Eagles***, 223 A.2d 742, 745 (Pa. 1966) (citations omitted, italics added).

Here, Lobato has only guessed at what caused the incident, thus, there is insufficient evidence of proximate cause to support his theory GCM was

---

[10] The trial court treated this contention as a claim it "disregarded evidence of record in determining the jury would be required to rely on conjecture as to the cause of [Lobato's] accident."  Trial Court 1925(a) Opinion, 8/7/23, at 10.  The court rejected the claim, noting Lobato failed to specify what evidence the court allegedly disregarded.  ***See id.*** at 10-11.

negligent in failing to cover the trench, and the trial court did not err in granting summary judgment. *See id.* at 745.

In his third issue, Lobato asserts the trial court erred by "failing to consider and give proper deference to the opinions and conclusion set forth" in his expert's report. Lobato's Brief at 38; *see generally id*. at 37-47.

The opinion of an expert witness is incompetent as evidence if it lacks an adequate basis in fact. *See Gillingham v. Consol Energy, Inc.*, 51 A.3d 841, 849 (Pa. Super. 2012). There must be an adequate basis in fact to enable an expert to opine with a reasonable degree of certainty. *See id*. *See also, Krishack v. Milton Hershey School*, 145 A.3d 762, 765-67 (Pa. Super. 2016) (expert report was insufficient to demonstrate proximate causation because it required "more than simple deductive reasoning, but instead . . . impermissible speculation and conjecture.")

The trial court explained it had "not disregarded nor disputed any finding contained within [Lobato's] expert opinion report; however, the findings therein did not create a genuine issue of material fact concerning proximate causation which would have precluded summary judgment." Trial Court 1925(a) Opinion, 8/7/23, at 10.

Our review of the record comports with that of the trial court. Lobato's expert's opinion was incompetent to establish causation because it lacked an adequate basis in fact: the expert could not have formed his opinion with a reasonable degree of certainty. In short, Lobato's expert opinion finding GCM

- 19 -

responsible for the accident was based on the expert's belief the incident occurred because "a leg of the scaffold dropped into an unprotected opening in the floor causing [Lobato] to fall to the floor below[.]" Expert Report, 11/28/22, at 1. As discussed above, there is simply no testimony or other evidence to support Lobato fell because the scaffold dropped into the trench. Moreover, the expert report relies on a second theory of liability that Lobato never advanced and contradicts his sworn testimony, namely GCM is liable for failing to adequately supervise Lobato's use of the scaffold because they knew or should have known Iron Valley and/or J&C used incorrect "work practices" with respect to the scaffold. *See id*. at 23-24, 26.

We see nothing to differentiate this matter from *Krishack*. Here, Lobato's expert simply speculated, without evidence, the scaffolding shifted into the trench causing Lobato to fall. Because no evidence supports it, the expert's opinion is not competent to prove causation. *See id*. at 768. Lobato has not shown the trial court disregarded the expert report or otherwise improperly failed to give it proper deference. His third claim does not merit relief.

In his fourth issue, Lobato contends the trial court "usurp[ed] the jury's role as factfinder in its analysis of Section 433 of the Restatement (Second) of Torts by undertaking to weigh the evidence and erroneously applying the factors in a manner inconsistent with their purpose[.]" Lobato's Brief at 61; *see id*. at 61-74. Lobato claims the trial court improperly treated the

elements of Section 433 as "required factors that [Lobato] was required to meet." *Id*. at 64.

The trial court did not address this issue in its Rule 1925(a) opinion. *See* Trial Court 1925(a) Opinion, 8/7/23, at 5-13. However, our review of the trial court's opinion on summary judgment does not support Lobato's position. The trial court never stated Lobato was required to meet each factor of the Restatement. *See* Trial Court Opinion, 5/4/23, at 5-9. Rather it used the factors as a framework for discussing the evidence of record and explained Lobato's own evidence was a significant factor in its determination Lobato had not shown the trench was a proximate cause of the incident. *See id*.

Moreover, even if we were to assume, *arguendo*, the trial court improperly applied the Section 433 factors, Lobato would not be entitled to relief. As the trial court explained in its Rule 1925(a) opinion, and as discussed above, there is simply nothing of record to support a finding the trench was the proximate cause of Lobato's injury, and the jury would be forced to guess what caused Lobato's fall. *See* Trial Court 1925(a) Opinion, 8/7/23, at 11-12. Lobato's fourth claim does not merit relief. *See Watkins*, 223 A.2d at 745.

In his fifth and final claim, Lobato maintains the trial court did not apply the correct standard in granting summary judgment because it referenced *Arcidiacono*, *supra,* a case that did not involve summary judgment, in its decision. *See* Lobato's Brief at 74-82; Trial Court Opinion on Summary

Judgment, 5/4/23, at 7. We have reviewed the trial court's opinion on summary judgment which clearly cites to and applies the correct standards for summary judgment, negligence, and determining proximate cause. ***See*** Trial Court Opinion on Summary Judgment, 5/4/23, at 5-6. The trial court never said the decision in ***Arcidiacono***, where a jury found in favor of a defendant in a negligence action, was controlling. ***See id***. at 7. Rather, the trial court cited to it, in *dicta*, as an example of a case with a similar fact pattern wherein the defendants' action or lack of action was not a substantial cause of the plaintiff's injury. ***See id***. at 7; Trial Court 1925(a) Opinion, 8/7/23, at 12-13. Thus, Lobato's final claim does not merit relief.

Accordingly, for the reasons discussed above, we find that the trial court did not err in granting summary judgment in this matter.

Order affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/15/2024